**SEMINOLE POINT HOSPITAL CORPORATION**

v.

**AETNA CASUALTY & SURETY COMPANY.**

Civ. No. 86–414–D.

United States District Court, D. New Hampshire.

Nov. 23, 1987.

---

Russell F. Hilliard, Concord, N.H., for plaintiff.

Edward M. Kaplan, Concord, N.H., for defendant.

### ORDER

DEVINE, Chief Judge.

This is a petition for declaratory judgment[1] by Seminole Point Hospital Corpora-tion ("Seminole Point") to determine the existence and extent of insurance coverage provided by a Workers Compensation and Employers Liability Insurance Policy issued by Aetna Casualty & Surety Company ("Aetna") to Seminole Point. The insurance coverage dispute is presented to the Court on cross-motions for summary judgment. Both parties have acknowledged that no material issues of fact are in dispute.

### The Undisputed Facts

On October 25, 1984, Aetna issued a Workers Compensation and Employers Liability Insurance Policy ("the policy") to Seminole Point and its president and executive director, James O'Neill. On May 9, 1985, Donna Richardson, James O'Neill's secretary, and Kathleen Burns, Seminole Point's medical records department manager, filed claims in a New Hampshire Superior Court alleging that during the course of their employment they were subjected to sexually suggestive remarks, requests for sexual favors, and acts of assault and battery, including inappropriate touchings by O'Neill; James Murphy, Seminole Point's director/executive officer; and other Seminole Point employees. They further allege that Seminole Point knew of this conduct but that no steps were taken to prevent such activities. As a result of the continual sexual harassment, Ms. Richardson and Ms. Burns allege that they were forced to leave their employment. *See, e.g.*, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibit 2 (Writ of Summons by Donna Richardson to Seminole Point Hospital Corporation and James O'Neill, May 9, 1985.)

Seminole Point, Murphy, and O'Neill have requested defense and indemnification by Aetna under its policy. At issue is the policy's exclusion of coverage of intentional acts. Specifically, the policy excludes: "bodily injury intentionally caused or aggravated by [the policyholder]" and "damages arising out of the discharge of, coercion of, or discrimination against any em-

---

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 2201, 2202, as well as 28 U.S.C. § 1332, and venue is correct in this judicial district by way of 28 U.S.C. § 1391.

ployee in violation of law." *Id.*, Exhibit 1 at Part 2(c)(5) and (c)(7). Aetna denies that it is obligated to defend or indemnify Seminole Point for the intentional acts of sexual harassment and assault and battery. In addition, at issue is whether the policy extends coverage to Murphy.

### Discussion

A declaratory judgment action is appropriate to determine an insurer's obligation to defend suits brought against its insureds. *Andrews v. Nationwide Mut. Ins. Co.*, 124 N.H. 148, 152, 467 A.2d 254, 256 (1983). The general rule of construction applicable to the interpretation of insurance policies is that the court will honor the reasonable expectations of the policyholder. *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982). Ambiguities in the language of an insurance policy are construed in favor of the insured and against the insurer. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 985 (1980). Aetna bears the burden of proving noncoverage. *Great Lakes Container Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 727 F.2d 30, 32 (1st Cir.1984).

### A.   Coverage of Murphy under the Policy

■ Aetna's policy is geared toward employers, not employees. It provides coverage only for the "insureds", defined in the policy in the General Section, Part B, as follows: "You are an insured if you are an employer named in Item 1 of the Information Page." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibit 1 (policy), at 5.[2] Item 1 of the aforementioned Information Page lists Seminole Point Hospital Corporation and James O'Neill as Insureds, but not James Murphy. *Id.* at 3. Therefore, James Murphy is not insured under the policy, and Aetna is under no obligation to defend or indemnify him.

2.  Plaintiff's Exhibit 1 contains no page numbers, and the Court has therefore supplied its

### B.   Coverage of James O'Neill under the Policy

James O'Neill is listed as an "insured" employer under the policy. However, the policy excludes coverage for discriminatory and intentional acts. Therefore, at issue is whether the nature of his actions is such that he is subject to the policy's exclusion.

■ The acts alleged in Ms. Burns' and Ms. Richardson's complaints, such as unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature, which caused the employees to leave their jobs, constitute allegations of sexual harassment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986); 29 C.F.R. § 1604.11(a) (1985 & Supp.1987). Sexual harassment of female employees is gender-based discrimination violative of 42 U.S.C. § 2000e–2. *Heelan v. Johns–Manville Corp.*, 451 F.Supp. 1382, 1388 (D.Colo.1978). Sexual harassment amounts to discrimination with respect to the terms, conditions, or privileges of employment when the employer creates or condones a substantially discriminatory work environment, regardless of whether the complaining employee loses any tangible benefit as a result of the discrimination. *Bundy v. Jackson*, 641 F.2d 934, 943 (D.C.Cir.1981). In short, the alleged harmful results of O'Neill's acts of sexual harassment "arise out of discrimination against employees in violation of law," Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibit 1 at Part 2(c)(7), and therefore are excluded from coverage under the policy.

■ Mr. O'Neill's acts are also excluded from coverage under the policy's intentional acts exclusion. Mr. O'Neill's alleged acts of assault and battery, placing his hands under Ms. Richardson's dress and making various physical touchings of Ms. Burns, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibits 2, 3, 4, were so certain to cause a particular kind of harm that it can be said

own.

he intended the harm. *Allstate Ins. Co. v. Browning*, 598 F.Supp. 421, 423 (D.Or. 1983); *see also* 7A Appleman, *Insurance Law and Practice* § 4492.01 (Supp.1987) (injury caused by assault and battery generally not considered accidental); *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 523–24, 517 A.2d 800, 802 (1986).

The Court finds from the undisputed facts that O'Neill's acts were discriminatory and intentional. The damage and injury resulting from these acts are therefore excluded from coverage under the policy.

### C. Coverage of Seminole Point

Seminole Point is listed as an "insured" employer under the policy. The complaints allege that the acts of sexual harassment were known to Seminole Point, but that it took no steps to prevent such activities. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibit 2.

Generally, an intentional tort committed by a corporate officer in the course of his duties as a managing agent constitutes an intentional tort by the corporation, but only if the officer is acting for the corporation, and not in furtherance of his or her own purposes. *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 884 (3d Cir.1975); *see also Aetna Casualty & Surety Co. v. Shuler*, 72 A.D.2d 591, 421 N.Y.S.2d 87, 88 (1979); S. Speiser, *The American Law of Torts* § 4:51 (1983). This recognizes that a corporation acts through its agents, whose acts are the acts of the corporation. *Id.* 421 N.Y.S.2d at 88. Thus, if O'Neill or Murphy were acting within the scope of their duties, and not in furtherance of their own purposes, the corporation would be vicariously liable for their intentional acts.

■ An agent acts outside the scope of his employment if the agent's conduct is either not "of a kind he is authorized to perform," or not "actuated, at least in part, by a purpose to serve the principal." Restatement (Second) of Agency §§ 228(1)(a), (c) (1958). *See Morin v. People's Wet Wash Laundry Co.*, 85 N.H. 233, 156 A. 499 (1931) (assault). Obviously, neither O'Neill nor Murphy was authorized to perform acts of sexual harassment, and it is doubtful that such acts were performed to serve the corporation. Therefore, they were acting outside the scope of their employment. It must be concluded that such acts did not constitute an intentional act as to the corporation.

■ However, employers have an affirmative duty to investigate claims of sexual harassment and deal appropriately with the offending personnel under the Civil Rights Act of 1964, because failure to investigate gives tacit support to the discrimination and because the absence of sanctions encourages abusive behavior. *Munford v. James T. Barnes & Co.*, 441 F.Supp. 459, 466 (E.D.Mich.1977). Thus, Seminole Point may be liable for O'Neill's and Murphy's alleged wrongdoings for its own negligent supervision and failure to undertake an investigation to find out what was taking place. *American States Ins. Co. v. Borbor By Borbor*, 826 F.2d 888, 892 (9th Cir.1987). Liability insurance policies are typically sold and purchased to provide indemnification for liability which may be imposed as a result of negligence. *Id.* at 895. The policy's intentional acts exclusion does not preclude coverage for a negligent insured. The policy, then, provides coverage for the corporation's alleged negligence, and Aetna must proceed in its defense of the corporation. It must defend and indemnify the corporation for its negligence, but will not be responsible for the corporation's intentional or discriminatory acts.

### Conclusion

For the reasons stated above, the Court finds that Aetna has no duty to defend or indemnify Mr. Murphy or Mr. O'Neill for the alleged acts of sexual harassment and assault and battery. However, Aetna must defend and indemnify Seminole Point in connection with liability arising from Seminole Point's own negligent supervision or failure to investigate.

SO ORDERED.