261 N.J. Super. 133 (1992)
617 A.2d 1259
ROBERT MROZ AND DIANE MROZ, PLAINTIFFS,
v.
JAMES W. SMITH, DEFENDANT-THIRD-PARTY-PLAINTIFF-RESPONDENT,
v.
CONTINENTAL CASUALTY COMPANY, THIRD-PARTY-DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1992.
Decided December 31, 1992.
*134 Before Judges PETRELLA, D'ANNUNZIO and KEEFE.
John B. LaVecchia argued the cause for appellant (Connell, Foley & Geiser, attorneys; Mr. LaVecchia, of counsel; Ernest W. Schoellkopff, on the brief).
Henry J. Franzoni, Jr., argued the cause for respondent.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Continental Insurance Company (Continental) appeals on leave granted from an interlocutory order which required it to assume the defense of James W. Smith and indemnify him for any loss resulting from an action brought by plaintiffs Robert and Diane Mroz for sexual harassment and numerous harassing telephone calls.
The motion judge decided the matter on cross-motions for summary judgment in the third-party portion of the litigation in which Smith sought to compel Continental to provide him with a defense and indemnification for any recovery against him by the Mrozes.
On its appeal Continental argues that (1) the motion judge erroneously disregarded the policy exclusion for injury or loss caused by a violation of a penal law or ordinance; (2) the injuries alleged in the Mrozes' complaint are not covered since they were intended or expected from the standpoint of its insured; (3) the judge violated public policy in ordering it to defend and indemnify Smith for a loss or damages incurred as a result of his willful wrongdoing in violation of a criminal statute; and (4) in any event, the judge should have excluded coverage for punitive damages.
Due to the numerous harassing and annoying telephone calls to the residence of the Mrozes from 1981 through 1990, the *135 Mrozes obtained a "caller I.D. device" and retained the services of a private investigator. As a result it was determined that Smith had made the telephone calls. Smith had been a co-employee of Diane Mroz and had assertedly made unsolicited sexual advances towards her.
On September 19, 1990, the Mrozes filed a complaint against Smith which alleged that he had made "unsolicited sexual advances toward her which she rebuffed." The complaint also alleged that Smith made "thousands of harassing and annoying telephone calls" to plaintiffs' residence from 1981 until 1990. It asserted that the actions of Smith caused shock, emotional distress and mental anguish for which the Mrozes sought compensatory and punitive damages.
After being served with the complaint, Smith turned it over to his insurer, Continental, and requested it to defend the action under his homeowner's policy which included a provision for extended coverage. Continental declined coverage, taking the position that the homeowner's policy did not provide coverage for what had been alleged in the complaint.
In the meantime, Smith's personal attorney filed an answer to the complaint and a counterclaim. He also successfully moved to add Continental as a third-party defendant.
The pertinent policy provisions in Continental's homeowner's policy are set forth below. In a subsection entitled "Coverage E-Personal Liability," the following provision specifies the coverage for claims made against the insured, and provides:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.
*136 The policy defines "occurrence" as: "an accident, including exposure to conditions, which results, during the policy period in: (a) bodily injury or (b) property damage."
After setting forth the coverage provisions, the policy lists exclusions in Section 11-Exclusions. Subsection (1) of the exclusion provision for personal liability states that coverage does "not apply to bodily injury or property damage: a. which is expected or intended by the insured."
Smith's homeowner's policy had an added provision which provided for a liability extension which amended the definition of personal liability for which Continental would defend its insured. That provision provided:
PERSONAL LIABILITY is amended as follows:
A. The definition of bodily injury is amended to include "Personal Injury". "Personal injury" means injury arising out of one or more of the following offenses:
1) False arrest, detention or imprisonment or malicious prosecution; or
2) Libel, slander or defamation of character; or
3) Invasion of privacy, wrongful eviction or wrongful entry.
Among the exclusions to the liability extension is one that provides: "This coverage does not apply to ... Injury or loss caused by violation of a penal law or ordinance committed by or with the knowledge or consent of any insured."
In granting Smith's motion for summary judgment and denying Continental's cross-motion for declaratory judgment, the motion judge concluded that there was an inconsistency in the policy because, as he viewed it, the acts for which the policy liability extension provided coverage were necessarily intentional acts, and the policy excludes coverage for intentional acts of the insured. The motion judge further determined that due to the inconsistency, under established case law, the policy was to be interpreted to afford coverage to the insured. The judge also decided that plaintiffs' complaint essentially amounted to one for invasion of privacy, which is listed in the liability extension. He found that the exclusion of coverage for acts that constituted a violation of penal law, was inconsistent since *137 the extension of liability provision included acts which he described as all being violations of state statutes, and therefore, "clearly inconsistent" with the coverage limitations. We note initially that the acts included in the extension of coverage do not all constitute violations of state statutes.
We deal initially with the more obvious problem of punitive damages. Regardless of the judge's ruling on the cross-motions for summary judgment, it is clear that the policy does not provide coverage for punitive damages. Indeed, Smith's attorney conceded this to be so at oral argument.
We turn then to the question of whether the policy provides coverage for the acts alleged in the complaint filed by the Mrozes against Smith.
It is clear that the policy extends no coverage for a violation of penal laws and there should be no coverage to Smith as a result. On its face, the complaint against Smith alleges not merely a simple act of invasion of privacy, but intentional harassment, which is a violation of penal law. See N.J.S.A. 2C:33-4. It is not necessary to a determination of coverage that Smith be charged with or convicted of any crime before a penal law exclusion or intentional act exclusion can be applied. See Atlantic Employers Insurance Co. v. Tots & Toddlers Pre-School Day Care Center, Inc., 239 N.J. Super. 276, 282, 571 A.2d 300 (App.Div.), certif. denied, 122 N.J. 147, 584 A.2d 218 (1990).
The policy provisions in the liability extension section only expand the definition of bodily injury to include certain specified acts, described as "offenses," which are now considered "personal injury." Nonetheless, although the definition of personal injury is extended, this does not automatically extend coverage to such "offenses," including those set forth in subsection (3), i.e., "invasion of privacy." In addition to considering the policy exclusion for violations of penal law, in order to determine whether there is coverage, it is still necessary to refer back to the initial language of the policy which defines an *138 occurrence. As previously indicated, an occurrence is "an accident" resulting in "bodily injury or property damage." The exclusion provision further provides that coverage does not apply to bodily injury or property damage expected or intended by the insured. Hence, any "bodily injury" caused by an "occurrence" must be an "accident" and cannot be an event which was "expected or intended by the insured."
The focus of inquiry in deciding what is an accident, and therefore a covered occurrence is on whether the insured intended the injury, not the act which caused the injury. Voorhees v. Preferred Mutual Insurance Co., 128 N.J. 165, 183, 607 A.2d 1255 (1992). Where, as here, the actions are "particularly reprehensible," an intent to injure can be presumed from the act without an inquiry into the actor's subjective intent. Voorhees v. Preferred Mutual Insurance Co., supra, 128 N.J. at 184, 607 A.2d 1255; Atlantic Employers Insurance Co. v. Tots & Toddlers Pre-School Day Care Center, Inc., supra, 239 N.J. Super. at 283, 571 A.2d 300.
It is clear, under the bare allegations of the complaint, that not only was there no accidental occurrence or negligent tort, but considering the allegations of the numerous occurrences involved, Smith's actions, if the allegations are true, could only have been intentional both in purpose and result. Accordingly, there is no coverage under the homeowner's policy. See S L Industries v. American Motorists, 128 N.J. 188, 212, 607 A.2d 1266 (1992); Voorhees v. Preferred Mutual Insurance Co., supra, 128 N.J. at 184, 607 A.2d 1255.
Accordingly, we reverse the order of the trial court and remand for entry of a judgment dismissing the third-party complaint.