294 N.J. Super. 569 (1996)
684 A.2d 66
LISA M. SCHMIDT, PLAINTIFF/RESPONDENT,
v.
DENNIS SMITH AND PERSONALIZED AUDIO VISUAL, INC., DEFENDANTS/THIRD PARTY PLAINTIFF/RESPONDENT, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, THIRD PARTY DEFENDANT/APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1996.
Decided November 6, 1996.
*573 Before Judges KING, KEEFE and LOFTUS.
Kevin E. Wolff argued the cause for appellant (McElroy, Deutsch & Mulvaney, attorneys; Mr. Wolff, of counsel and on the brief; Mary Rose Migliazza, on the brief).
Elizabeth Zuckerman argued the cause for respondent Lisa M. Schmidt (Mason, Griffin & Pierson, attorneys; Ms. Zuckerman, of counsel and on the brief; Ellen Barney-Balint, on the brief).
John J. Bubliewicz argued the cause for respondent Dennis Smith.
Francis X. Garrity argued the cause for respondent Personalized Audio Visual, Inc. (Garrity, Graham & Favetta, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
Third party defendant United States Fidelity and Guaranty Co. (USFG) appeals from a judgment entered on cross motions for summary judgment that USFG had a duty to defend and indemnify defendants Dennis Smith (Smith) and Smith's employer, Personalized Audio Visual, Inc. (PAV), for plaintiff Lisa Schmidt's claim of hostile work environment sexual harassment. We affirm in part and reverse in part for the reasons stated herein.
PAV, a closely held corporation, was hired by the Somerset Hilton Hotel (Hilton) to run the hotel's business center. Smith was the president of PAV, and his father, Wilton Smith, was a *574 part-time employee and the corporation's chief executive officer. Plaintiff was hired in December 1990 by Smith to work as the office manager of the business center. She began to work for PAV on January 2, 1991, and resigned on February 19, 1991 because she was being sexually harassed by Smith.
On September 9, 1991, plaintiff filed a complaint against PAV and Smith alleging hostile work environment sexual harassment in violation of the Law Against Discrimination (LAD), assault, assault and battery, intentional infliction of emotional distress and invasion of privacy. Plaintiff later amended her complaint to add negligence counts against both defendants.
Defendants sought coverage for the claims alleged by plaintiff from PAV's insurance carrier USFG under PAV's Comprehensive General Liability (CGL) policy and Workers Compensation policy. USFG denied coverage and refused to defend against plaintiff's claim. Defendants instituted a third party action against USFG for declaratory judgment seeking defense costs and coverage. After answering the third party complaint, USFG requested that plaintiff's action against defendants be tried before the declaratory judgment action. The trial court granted USFG's request.
Plaintiff testified at trial that Smith's sexual harassment of her began after she was hired, but before she began working for PAV. Approximately five days before her first day of work, following a meeting with Smith to discuss her job responsibilities, plaintiff was invited to attend a Christmas party at the Hilton. After the party, Smith tried to kiss plaintiff in the elevator, which she resisted, and, later attempted to have oral sex with her. Once plaintiff started work Smith repeatedly requested to have sex with her, and on several occasions grabbed her buttocks and breasts and tried to kiss her. According to plaintiff, no other PAV employees witnessed anything that Smith did or said to her.
Plaintiff testified that as a result of Smith's conduct she suffered severe emotional distress, accompanied by physical manifestations. Specifically, she testified that she had a relapse of anorexia and bulimia after the harassment began at PAV. Additionally, she *575 began drinking excessively and attempted suicide on four occasions.
The jury returned a verdict in favor of plaintiff in the amount of $80,000. Specifically, in answers to interrogatories, the jury found that plaintiff was the victim of a hostile work environment and sexual harassment, that she had been assaulted by Smith, that Smith committed an assault and battery upon her, and that he had intentionally inflicted emotional distress upon her. As to proximate causation, the jury was asked and answered the following question:
CLERK: Was the sexual harassment, question one; the assault, question two; the assault and battery, question three; or the intentional infliction of emotional distress the proximate cause of any physical or emotional injury to Lisa Schmidt?
FOREMAN: Yes.
Plaintiff moved for an order granting attorney's fees pursuant to R. 4:42-9(a)(8), as provided under LAD. The trial court entered an order of final judgment against Smith and PAV in the amount of $181,730.36, which included damages, counsel fees, and prejudgment interest. The final judgment was not appealed. USFG was given the opportunity to do so on behalf of the defendants but declined.
Thereafter, plaintiff filed a motion to intervene in the declaratory judgment action between defendants and USFG pursuant to R. 4:33-1. The court granted plaintiff's motion.
USFG and defendants cross-moved for summary judgment in the declaratory judgment action. The trial court ruled that PAV and Smith were entitled to coverage for plaintiff's damages, all taxed costs (including plaintiff's counsel fees), and for defense counsel fees and costs.[1] This appeal followed.

*576 I
The trial court found that in order for USFG to have been entitled to summary judgment as to PAV, USFG had to demonstrate that PAV intentionally caused Schmidt's injuries. According to the trial court, no such evidence existed. The court noted:
Seems clear to me, hopefully I'm right, that USFG must pay in this case. It can't deny coverage to PAV based on an intentional act committed by one of its employees. There is absolutely no evidence whatsoever which indicates that PAV acted intentionally or participated or condoned or had knowledge of the illegal activity. Although PAV was found vicariously liable for creating a hostile work environment, it hardly follows that one can conclude that PAV intended to harm the plaintiff. See, whatever it means, Lehmann versus Toys `R' Us, Inc., 132 New Jersey 587 [626 A.2d 445], 1993.
USFG argues that its duty to indemnify PAV extends only to the specific liability that the jury in the underlying action found to exist. USFG correctly observes that "there can be no doubt that the jury's findings were that PAV was liable only for hostile work environment sexual harassment and that Dennis Smith was liable for both that sexual harassment and for the intentional torts he committed against plaintiff." As such, it is USFG's position that the jury did not find that PAV was vicariously liable for the intentional torts of Smith, and therefore it was error for the trial court to find coverage based upon PAV's vicarious liability. USFG cites to the instructions given to the jury regarding PAV's liability, and notes that the charge did not include instructions on how PAV may be vicariously liable for the intentional acts of Smith. Further, the special interrogatories did not ask the jury whether PAV was vicariously liable for the actions of Smith.
USFG may not now argue that the trial court erred in its instructions to the jury regarding the vicarious liability of PAV. USFG refused to defend PAV in the underlying action, and further refused to participate at the trial in any way. In addressing this topic in colloquy with USFG's trial counsel[2] at the summary judgment hearing, the trial court noted:

*577 That is why I begged you to get into this case when it was being tried because they are not going to attempt to extricate PAV. You left them in a situation where as a matter of tactics they wanted to, some assurance that if there was a judgment it would be against PAV. That's why you had the opportunity to come in and defend this case. That was a tactical decision that you made. You were in the courtroom for much of the trial, if not the entire trial. You declined to participate.... If you had been there as a party to the action, you would have control over the defense. You chose not to.
Moreover, USFG elected not to represent PAV's interest upon appeal. Accordingly, the judgment entered against PAV is final, and USFG's motion for summary judgment, contending as it did that there were no genuine fact issues, necessarily acknowledged that it was bound by the record developed in the Schmidt action. That judgment was based upon the jury finding that Schmidt was subjected to a hostile work environment in the course of her employment by PAV.
Based upon the evidence presented at the trial as well as the jury's verdict, we agree with the trial court that the facts of this case are such that an employer will be held vicariously liable for a hostile workplace. Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 617-620, 626 A.2d 445 (1993). In Lehmann, the Court held that "employer liability for supervisory hostile work environment sexual harassment shall be governed by agency principles." Id. at 619, 626 A.2d 445. The Court cited Section 219 of the Restatement (Second) of Agency, which outlines the liability of a master for the torts of a servant.
(1) a master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a nondelegable duty of the master, or

*578 (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.
Applying these principles, the Court declared that under § 219(1), an employer whose supervisory employee is acting within the scope of his or her employment will be liable for the supervisor's conduct in creating a hostile work environment. Id. at 619, 626 A.2d 445. Moreover, the Court went on to hold that "even in the more common situation in which the supervisor is acting outside the scope of his or her employment the employer will be liable in most cases for the supervisor's behavior under the exceptions set forth in § 219(2)." Id. at 619-620, 626 A.2d 445. As an example of this type of vicarious liability, the Court used the scenario where "an employer delegates the authority to control the work environment to a supervisor and that supervisor abuses that delegated authority." Id. at 620, 626 A.2d 445 (citing Katherine S. Anderson, Note, Employer Liability Under Title VII for Sexual Harassment After Mcritor Savings Bank v. Vinson, 87 Colum.L.Rev. 1258, 1274 (1987) (suggesting vicarious liability may follow from agency principles when supervisor acts as "employer's surrogate in the day to day management of his subordinates")).
The Lehmann Court provided a check list for the determination of whether a supervisor who creates a hostile work environment was aided in accomplishing that tort by the power delegated to him or her to control the day-to-day working environment. The detailed fact specific analysis asks:
1. Did the employer delegate the authority to the supervisor to control the situation of which the plaintiff complains * * *?
2. Did the supervisor exercise that authority?
3. Did the exercise of authority result in a violation of [the LAD]?
4. Did the authority delegated by the employer to the supervisor aid the supervisor in injuring the plaintiff?
[Lehmann, supra, 132 N.J. at 620, 626 A.2d 445.]
When the answer to each of these questions is yes, then the employer is vicariously liable for the supervisor's harassment. under § 219(2)(d). Ibid.
*579 The Court also noted that another basis for employer liability under agency law is negligence as set forth under § 219(2)(b). While the Court did not set forth a standard of negligence governing sexual harassment claims, it noted that the existence of some effective preventative mechanisms such as anti-harassment policies, formal and informal complaint structures and monitoring mechanisms provides some evidence of due care on the part of the employer. Id. at 621, 626 A.2d 445.
At the trial in this matter, defendants introduced no evidence to contradict plaintiff's proofs that PAV delegated authority to Dennis Smith to control the work environment; that Smith exercised that authority; that the exercise of that authority resulted in a violation of the LAD; and that the delegation of the authority by PAV aided Smith in injuring plaintiff. PAV gave Smith the title of president and gave him the authority to control plaintiff's work environment. While plaintiff was alone with Smith, Smith subjected her to a hostile work environment which the jury found to cause her injury. With no factual dispute raised by defendants as to the delegation of authority by PAV, the trial court properly concluded that if the jury found plaintiff was sexually harassed by Smith, PAV's vicarious liability must follow. Moreover, there was no evidence presented at trial that there was an intent to harm on the part of PAV.
As the trial court observed, the facts adduced at trial could not lead to any result other than a finding that if Smith was liable for sexual harassment PAV was also liable. There is no harm in the trial court having failed to explain to the jury the theory under which PAV was liable. There was no genuine issue as to any material fact on that issue. The disputed fact in the trial was whether the harassment by Smith actually occurred, and whether he in fact committed the assault and battery and intentional infliction of emotional distress.
Accordingly, we find no error in the trial court's conclusion that PAV's liability was based upon vicarious liability as a matter of law on the facts of this case.

*580 II
USFG contends that the trial court erred when it determined that USFG had a duty to indemnify PAV under either the CGL policy or the Workers' Compensation policy.
First, USFG asserts that, because plaintiff's only claim against PAV was that PAV was liable for hostile work environment sexual harassment, there was no duty to indemnify. This is so according to USFG because the claim falls squarely within the exclusion in USFG's CGL policy for injury to an employee arising out of and in the course of employment. The pertinent language of the policy is as follows:
This insurance does not apply:
(i) to bodily injury to any employee of the insured arising out of and in the course of his employment of the insured for which the insured may be held liable as an employer or in any other capacity....
PAV concedes in its appellate brief that, inasmuch as plaintiff's judgment against it was based upon the jury's finding of a hostile work environment, PAV "does not seek coverage for the judgment under the general liability policy." Thus, we agree with USFG that coverage should not have been afforded PAV under the CGL policy.
USFG also contends that the trial court erred when it determined that USFG had a duty to indemnify PAV under the employers liability part of the Workers' Compensation policy. Specifically, USFG maintains that the trial court failed to correctly apply Exclusion C5 and Exclusion C7 and the endorsement which amends and alters the C7 Exclusion.
Employers liability coverage "is traditionally written in conjunction with workers' compensation and is intended to serve as a `gap-filler' providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the worker's compensation statute...." Producers Dairy Delivery Co., Inc. v. Sentry Ins. Co., 41 Cal.3d 903, 226 Cal. Rptr. 558, 565, 718 P.2d 920, 927 (1986).
*581 The employers liability insurance here "applies to bodily injury by accident or bodily injury by disease," which arises "out of and in the course of the injured employee's employment" by the insured. Under the policy USFG agrees to pay "all sums [PAV] legally must pay as damages because of bodily injury to [PAV's] employees, provided the bodily injury is covered by this Employers Liability Insurance." The pertinent exclusions to the policy are as follows:
C. Exclusions.
This insurance does not cover:
4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
5. Bodily injury intentionally caused or aggravated by you;
* * * * * * * *
7. Damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law.
Exclusion C7 was amended and replaced with the following exclusion:
This insurance does not cover:
7. Damages arising out of coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.[[3]]
USFG asserts that amended Exclusion C7 applies to the facts of this case because the exclusion addresses damages arising out of, inter alia, "coercion," "harassment," or "discrimination" against an employee and "any personnel practices, policies, acts or omissions...." The jury found that PAV was liable for hostile work environment sexual harassment, and USFG maintains that this is precisely the type of claim the policy excludes coverage for under C7.
As stated earlier, PAV's liability for hostile workplace sexual harassment is based upon the jury's conclusion that Dennis Smith *582 committed the intentional acts of assault, battery and intentional infliction of emotional distress. There was no evidence that PAV intended to harass plaintiff. The trial court further held that PAV's liability was vicarious under Lehmann because it delegated control over the work environment to Dennis Smith who then used that control to harass plaintiff and cause her injury.
The question is whether Exclusion C7 applies to liability arising out of a finding of hostile workplace environment under Lehmann. No New Jersey cases have interpreted whether the language of this, or similar clauses, applies to employers who are found vicariously liable for the intentional torts of their employees, a liability that under the LAD translates into hostile workplace sexual harassment. While USFG maintains that the language of Exclusion C7 is clear and unambiguously applies to sexual harassment claims under the LAD, it appears to us that the exclusion in this circumstance is all but clear. This is so in light of the fact that the amended C7 Exclusion does not specifically exclude coverage for vicarious liability resulting from hostile workplace sexual harassment.
Because insurance policies are adhesion contracts, courts must assume a vigilant role in ensuring their principles of fairness and conformity to public policy. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 335, 495 A.2d 406 (1985). It is well settled that when interpreting insurance contracts the court should broadly read coverage provisions, and narrowly read exclusionary provisions. Search EDP v. American Home Assur., 267 N.J. Super. 537, 542, 632 A.2d 286 (App.Div.), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994). When the meaning of a phrase is ambiguous, the ambiguity is resolved in favor of the insured, Sparks, supra, 100 N.J. at 336, 495 A.2d 406, and in line with the insured's objectively-reasonable expectations. DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979). Moreover, if an insured's "reasonable expectations" contravene the plain meaning of the policy, even its plain meaning can be overcome. Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988).
*583 Here, under the employers liability section of the policy, it is reasonable for PAV to expect coverage for Smith's acts. Under Variety Farms, Inc. v. New Jersey Mfrs. Ins. Co., 172 N.J. Super. 10, 18, 410 A.2d 696 (App.Div. 1980), PAV was required to "make sufficient provision for the complete payment of any obligation" which it may incur to an injured employee. The employers liability section of the policy provided for liability that may fall outside of typical workers compensation coverage. Thus, it is reasonable for PAV to expect coverage for its vicarious liability resulting from the intentional torts of an employee.
In order to comply with PAV's legitimate expectations and the public policy undergirding the Workers' Compensation Act, C7's exclusionary language must be accorded a narrower interpretation than USFG gives it. For example, the exclusion may apply if PAV had an overt corporate policy or practice which promoted discrimination, or if PAV was aware of Smith's propensity for harassing women and knowingly placed him in charge of supervising women: conduct tantamount to intentional conduct. Clearly, an insurer can exclude coverage for intentional acts without violating public policy. See, e.g., New Jersey Mfrs. Ins. Co. v. Joseph Oat Corp., 287 N.J. Super., 190, 193, 670 A.2d 1071 (App. Div. 1995) (restriction for intentional acts). However, no such conduct was demonstrated with respect to PAV.
This application of the discrimination exclusion to the facts here is consistent with Seminole Point Hospital Corp. v. Aetna Casualty & Surety Co., 675 F. Supp. 44 (D.N.H. 1987). In that case, the defendant in a sexual harassment case sought defense and indemnification from its insurance company under a workers compensation and employers liability policy. The policy contained the same exclusion relied upon by USFG, i.e., an intentional injury exclusion and a discrimination exclusion. Id. at 45-46. Although the court found that the company's president was excluded from coverage under both exclusions because of his intentional acts of sexual harassment, a different result was reached for the corporation. The court found that since the individual defendants were not *584 authorized to perform acts of sexual harassment, and were therefore outside the scope of their employment, "such acts did not constitute an intentional act as to the corporation." Id. at 47. Nevertheless the court reasoned, the company could be liable for its supervisory employees' alleged wrongdoing on the basis of negligent supervision and/or failure to investigate. "Liability insurance policies are typically sold and purchased to provide indemnification for liability which may be imposed as a result of negligence." Ibid. Accordingly, the court held that the insurer must defend and indemnify the corporation for its alleged negligence although not for its intentional or discriminatory acts.
USFG alternatively argues that the C5 Exclusion for "bodily injury intentionally caused or aggravated by you" operates to exclude coverage under these facts. USFG asserts that because of the exclusivity provision of the Workers' Compensation Act, N.J.S.A. 34:15-1 to -128, plaintiff had to allege an intentional wrong on the part of PAV in order to bring her civil suit. N.J.S.A. 34:15-8.[4]
We disagree. As noted earlier, the trial judge correctly determined that PAV was vicariously liable for the intentional acts of Smith. There has been no evidence that PAV acted intentionally in any way. The more pertinent issue is whether sexual harassment claims under LAD are exclusively remediable under the Workers' Compensation Act where the employer's conduct is not intentional.
USFG relies upon Joseph Oat, where this court held that an employee injured in the course of his or her employment could escape the exclusivity provisions of the Workers' Compensation
*585 Act and pursue a common law claim against his or her employer only if the claimants can show a "deliberate intention to injure." New Jersey Mfrs. Ins. Co., supra, 287 N.J. Super. at 195, 670 A.2d 1071 (quoting Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 170, 501 A.2d 505 (1985)). We held in Joseph Oat that where the claim of the plaintiff employees' escaped the exclusivity provisions of the Workers' Compensation Act, by claiming that the employer acted with a deliberate intention to injure, that very same level of intent brings that claim within the exclusion for "bodily injury intentionally caused or aggravated by you." New Jersey Mfrs. Ins. Co., supra, 287 N.J. Super. at 193, 670 A.2d 1071.
Joseph Oat, however is clearly distinguishable from this case. The court there was not dealing with claims of sexual harassment under LAD. Further, the court in that case addressed the allegation that the employer engaged in intentional conduct with a deliberate intention to injure. However, here PAV was found vicariously liable for the intentional conduct of its president pursuant to the provisions of the LAD. Plaintiff never attempted to prove that PAV acted intentionally in order to escape the exclusivity provision of N.J.S.A. 34:15-8.
None of the parties dispute the fact that plaintiff's injuries, arising as they did out of and in the course of her employment with PAV, were compensable under the Workers' Compensation Act. See generally, Cremen v. Harrah's Marina Hotel Casino, 680 F. Supp. 150, 153 (D.N.J. 1988). The issue here, as it was in Cremen, and, under different circumstances in Millison, supra, is whether the Legislature intended the Workers' Compensation Act to "serve as a worker's sole and exclusive remedy under circumstances such as those alleged." Id. at 169, 501 A.2d 505.
Clearly, there is no language in the LAD that mandates that claims made by employees against employers under it may only be brought under the Workers' Compensation Act. N.J.S.A. 10:5-1 to -42. Indeed, the Legislature's intent in enacting the LAD appears otherwise. Its intent was to have the LAD broadly *586 applied and liberally construed. The pertinent portion of the act provides:
Such harms have under common law given rise to legal remedies including compensatory and punitive damages. The legislature intends that such damages be available to all persons protected by this act and that this act be liberally construed in combination with other protection available under the laws of this state.
[N.J.S.A. 10:5-3].
Further, the LAD was specifically amended in 1990 to grant a plaintiff under the Act the right to a jury trial. L. 1990 c.12. If the Legislature had intended workers compensation to be the exclusive remedy for victims of harassment and discrimination in the workplace it would not have provided for a jury trial as well as compensatory and punitive damages.
Our conclusion is supported by the holding in Cremen, supra, where the court held that allegations of sexual harassment are "plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the Compensation Act." Id. at 159 (quoting Millison, supra, 101 N.J. at 179, 501 A.2d 505).

III
USFG next contends that the trial court's determination that coverage existed for Smith under the USFG policies was error. We first address the CGL policy.
The parties do not dispute that as an executive officer and president of PAV, Dennis Smith was an insured under the CGL policy. Further, because the CGL policy excludes coverage for "bodily injury to any employee of the insured arising out of and in the course his employment by the insured for which the insured may be held liable as an employer or in any other capacity," the policy only applies to pre-employment injury to the plaintiff. While evidence regarding pre-employment injuries was in the trial record, the jury was not asked to come to a conclusion as to the pre-employment incidents. It is impossible to know whether the jury verdict included the pre-employment actions by Smith. *587 Nonetheless, the trial court based its determination that the CGL policy covered Smith on its conclusion that "plaintiff suffered injuries both prior to and during her employment at PAV." We will assume for the purpose of this discussion that the trial court's conclusion was correct.
Plaintiff's injuries clearly constitute bodily injuries as that term has been defined. Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 179, 607 A.2d 1255 (1992). The critical issue is whether the injuries were caused by an "occurrence" i.e. an "accident, resulting in bodily injury neither expected nor intended from the standpoint of the insured," as that term has been interpreted.
The general rule crafted by the Supreme Court interprets "occurrence" and "accident" in a manner that serves two competing public policy interests. Voorhees, supra, 128 N.J. at 183, 607 A.2d 1255. The Court's interpretation seeks to "prevent those who intentionally cause harm from unjustly benefitting from insurance coverage while providing injured victims with the greatest chance of compensation consistent with the need to deter wrongdoing." Ibid. Accordingly, "the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause the injury." Ibid. "If not, the injury is "accidental" even if the act that caused the injury was intentional." Ibid.
Generally, this approach requires an inquiry into the subjective intent of the actor to cause injury. Id. at 184, 607 A.2d 1255. If the wrong-doer subjectively intends to cause some sort of injury that intent will generally preclude coverage, whether or not the exact injury occurs. SL Indus., Inc. v. American Motorists Ins. Co., 128 N.J. 188, 212, 607 A.2d 1266 (1992). However, if the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent. Ibid. For example, in Mroz v. Smith, 261 N.J. Super. 133, 138, 617 A.2d 1259 (App.Div. 1992), this court held that where the defendant had made unsolicited sexual advances to the plaintiff, and thousands of harassing phone calls, his actions were *588 particularly reprehensible and intent to injure could be presumed. Accordingly, the court held that the claims were not covered by the insured's homeowner's insurance policy. Ibid.
The question then is whether Smith's pre-employment actions were so reprehensible that intent can be inferred. Plaintiff alleged that Smith made unwelcomed sexual advances and attempted to kiss plaintiff, which she resisted, the night of the Christmas party at the Hilton before her employment began.
Assuming the jury awarded damages based on that conduct, its verdict was invariably influenced by the entire continuum of events. Consequently, its ultimate finding that Smith assaulted plaintiff, assaulted and battered her, and intentionally inflicted emotional distress upon her compels the conclusion that he expected or intended some harm to ensue from his actions.
Our conclusion is the same under the Workers' Compensation policy. That policy excluded coverage for "bodily injury intentionally caused or aggravated by you." As noted above, the torts committed by Smith virtually compel the conclusion that the jury believed Smith expected or intended some injury to plaintiff.
Thus, the trial court erred in finding coverage for Smith under either policy.

IV
USFG maintains that it did not have a duty to defend either Smith or PAV under either or both of the policies in question. Defendants, of course, disagree.
"[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J. Super. 68, 77, 100 A.2d 198 (App.Div. 1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy." Voorhees, supra, 128 N.J. at 173, 607 A.2d 1255. "When *589 the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Ibid. (citing Danek, supra, 28 N.J. Super. at 76-77, 100 A.2d 198). "If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." Ibid. (citing Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 232 N.J. Super. 467, 470, 557 A.2d 693 (App.Div. 1989)). "When multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated." Id. at 174, 607 A.2d 1255.
"The duty to defend however, is determined by whether a covered claim is made, not by how well it is made." Voorhees, supra, 128 N.J. at 174, 607 A.2d 1255. A third party does not write the complaint to inform the defendant's insurer of potential coverage; essentially a complaint need only apprise the opposing party of disputed claims and issues. Jardine Estates, Inc. v. Koppel, 24 N.J. 536, 542, 133 A.2d 1 (1957).
As to PAV, the amended complaint alleged that PAV was negligent and breached its duty to plaintiff by failing to properly hire, train and supervise its supervisors. In our view, that was a covered claim giving rise to USFG's duty to defendant PAV under the Workers' Compensation policy. USFG maintains that coverage for these claims was clearly excluded by Exclusion C7. However as stated above, USFG was wrong in that assertion. In any event, USFG's duty to defend may, at times, be broader than its duty to indemnify.
As to Smith, USFG also had a duty to defend him. Although the original complaint appears to have alleged intentional conduct resulting in injury to plaintiff and defense of that suit was rightfully rejected by USFG, the amended complaint alleged that Smith negligently inflicted emotional distress upon plaintiff. That allegation, if proven, would have been covered by the CGL policy. Voorhees, supra, 128 N.J. at 185, 607 A.2d 1255. As such, USFG had a duty to defend Smith "until the negligence claim had been dismissed." Ibid.
*590 Moreover, we are satisfied that USFG could have defended Smith with complete fidelity to him. Smith's defense in the trial of plaintiff's claim against him was that the complained of events simply had not occurred. In that context, USFG was not put in a position of conflict, thereby justifying its refusal to defend Smith. See Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 389, 267 A.2d 7 (1970) (holding that where an intentional and negligent act are alleged in the same complaint "[t]here may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such an action with complete devotion to the insured's interest"). Compare, Rutgers v. Liberty Mutual Ins. Co., 277 N.J. Super. 571, 649 A.2d 1362 (App.Div. 1994), certif. granted, 140 N.J. 274, 658 A.2d 298 (1995), appeal dismissed 143 N.J. 314, 670 A.2d 1057 (1995) (holding that, despite allegations of complaint, insurer cannot ethically undertake defense of insured where it has taken the position factually that the insured expected or intended pollution to result from its conduct); see also Trustees of Princeton University v. Aetna Casualty & Surety Co., 293 N.J. Super. 296, 680 A.2d 783 (App.Div. 1996). Clearly, the manner in which the plaintiff presented her proofs at trial, and the structure of the trial judge's interrogatories to the jury would not have left "the question of coverage unresolved." Rutgers, supra, 277 N.J. Super. at 578, 649 A.2d 1362. When the insured denies the tortious conduct altogether, the insurer in its defense of the insured is not placed in a conflict position where it might induce a jury to find an intention to cause injury, as opposed to negligently doing so. See Montanez v. Irizarry-Rodriguez, 273 N.J. Super. 276, 641 A.2d 1079 (App.Div. 1994) (discussing insurance counsel's ethical duty to the insured client).

V
USFG maintains that if this court determines that a duty to defend did exist, then the obligation of USFG to reimburse the defense costs is limited to those defense costs attributable to covered claims only.
*591 In SL Industries, supra, the Supreme Court stated the general rule
that when the insurer has wrongly refused to defend an action and is then required to reimburse the insured for its defense costs, its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between covered and non-covered claims.
[128 N.J. 188, 214-215, 607 A.2d 1266 (citations omitted).]
As set forth above, USFG had a duty to defend both Smith and PAV for the claims set forth in plaintiff's amended complaint. While we have also held that USFG is not obligated to indemnify Smith under either policy, it, nonetheless, had the duty to defend him until the covered claim was disposed of in some manner. Voorhees, supra, 128 N.J. at 185, 607 A.2d 1255. Here, that occurred only upon the return of a verdict by the jury. Accordingly, we deny USFG's request for a remand to apportion defense costs.
Finally, we reject USFG's argument that the trial court erred in awarding fees to plaintiff and defendant under R. 4:42-9(a)(6). That rule permits an award of fees "in favor of a successful claimant" in an action on a liability or indemnity policy. Plaintiff and PAV were successful in obtaining indemnity coverage for plaintiff's verdict. Although Smith was not successful in obtaining indemnity, he was successful in obtaining defense costs, a right he had under the policy. Thus, he was also a successful claimant within the purview of the rule.
As modified, the judgment under review is affirmed.
NOTES
[1] The trial judge and the motion judge in this case was the same person. Therefore, all references herein shall be to the "trial court" without distinguishing between the two separate functions performed by the Law Division judge.
[2] We note that USFG was represented in the trial court by a firm other than the one now representing it on appeal.
[3] We reject defendants' contention that Exclusion C7 as amended was not properly before the trial court for consideration, and, thus, should not be considered by us.
[4] N.J.S.A. 34:15-8 provides:

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong. [emphasis added]