247 N.J. Super. 82 (1991)
588 A.2d 864
SIDNEY L. HOFING; JOSEPH E. BUCKLEY, JR. AND HOFING & BUCKLEY, ESQUIRES, PLAINTIFFS-APPELLANTS,
v.
CNA INSURANCE COMPANIES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1991.
Decided April 1, 1991.
*84 Before Judges DEIGHAN and BAIME.
William F. Hartigan, Jr. argued the cause for appellants (McLaughlin & Cooper, attorneys; William F. Hartigan, Jr., on the brief and reply letter brief).
Anthony P. Pasquarelli argued the cause for respondent (Methfessel & Werbel, attorneys; Anthony P. Pasquarelli on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Plaintiffs Sidney L. Hofing, Joseph E. Buckley, Jr. and Hofing & Buckley, Esquires, appeal from a denial of their motion for summary judgment and the grant of a summary judgment in favor of defendant CNA Insurance Companies (CNA). Plaintiffs filed a declaratory judgment action in the Law Division against CNA contending that a Legal Professional Liability Policy (policy) issued to them requires CNA to defend them and provide coverage in an action filed against plaintiffs in North River Insurance Co. v. Hofing and Buckley, et al, No. L-51359-86.
The underlying facts concerning this action are not disputed. In 1977, North River Insurance Company (North River) retained plaintiffs to represent it in a surety bonding matter that resulted in litigation entitled North River Insurance Co. v. Kupper Engineering, Inc. and Borough of Mantoloking, No. L-4342-79. The facts underlying that case involved the issuance *85 of a $1.7 million performance bond by North River on behalf of Major Construction Co. (Major) with regard to a construction project for Mantoloking. Major became bankrupt and abandoned the project in May 1977. At the direction of North River, plaintiffs instituted a suit against Kupper Engineering and Mantoloking and also represented North River in Major's bankruptcy matter. In February 1986, during the litigation, plaintiff filed a substitution of attorney at North River's request. While represented by new counsel, North River settled the underlying suit for an undisclosed amount.
Plaintiffs' counsel fees and related expenses for their representation exceeded $1.6 million. After the substitution of attorney, North River filed a complaint against plaintiffs in the Law Division to compel them to turn over all documents compiled in North River Insurance Co. v. Kupper Engineering, Inc., and to allow North River to post bond as security for $44,708.92 in disputed legal fees.
Subsequently, North River filed an amended complaint in which it alleged:
The attorneys' fees charged by the defendants were unreasonable in that they included charges for time and labor not actually expended by counsel. That the services rendered by the defendants to the plaintiff were not effective. That the said charges included time that was required due to the defendants' failure to properly meet the orders of the trial court and that the hours expended did not contribute to the successful prosecution of the plaintiff's case and that the monies received by the defendants were far in excess of the value of the professional services rendered to the plaintiff.
The charges made by the plaintiff to the defendant violated the standards of professional conduct, more particularly Rule 1:5 of the RPC and those standards applicable to attorneys fees as defined by the courts of the State of New Jersey.
The first count of the complaint demanded judgment against plaintiffs for:
(1) An accounting of any and all monies paid by the plaintiff to the defendants;
(2) A determination as to the reasonable value of the professional services rendered by the defendant to the plaintiff;
(3) A judgment for the difference between the sum of money paid by the plaintiff to the defendants and the reasonable value of the services rendered, costs, interest and such other relief as may be just in the premises [sic].
*86 In the second count of the amended complaint, North River alleged that:
The defendants contracted with the plaintiff to perform professional services in accordance with the applicable standards of professional conduct and to render to the plaintiff legal services and advice in a professional manner.
The defendants breached their contract with the plaintiff to render legal services in a professional manner in accordance with the known and applicable professional standards and rules and laws of the State of New Jersey.
North River made the same demands for judgment in the second count against plaintiffs as stated in the first count but, in addition, demanded:
(4) Judgment for additional legal costs the plaintiff has and will incur to prosecute the action filed against Kupper Engineering, Inc. and the Borough of Mantaloking and costs, attorneys' fees, interest and such other relief as may be just in the premises [sic].
During discovery, North River described the circumstances underlying its suit in answers to interrogatories. North River stated that plaintiffs failed to advise them of court orders entered in the litigation against Kupper Engineering and Mantoloking, especially a partial summary judgment in favor of Kupper Engineering, and did not provide sufficient information to evaluate the effect of the orders on their case and violated the standards of conduct and care applicable to attorneys. As a result, North River continued to pay bills submitted by plaintiffs. North River also asserted that plaintiffs failed to properly advise North River of the steps it could take to settle the case and advise of the state of the applicable law in 1981. North River contended that it incurred excessive unnecessary fees as a result of plaintiffs' failure to properly manage and plan the case.
In the second count, North River contends that because of plaintiff's inadequacy it incurred, or will incur, additional attorneys' fees and expenses in retaining new counsel. No claim is made for the difference between the amount of settlement actually paid and the amount it could have received but for plaintiffs' negligence in handling the case.
*87 Plaintiffs forwarded North River's summons and complaint to CNA to assume the defense and coverage pursuant to the policy purchased from CNA. CNA informed plaintiffs that the loss did not fall within the scope of their coverage because it came within an exclusion pertaining to claims for return of fees. Accordingly, CNA refused to defend plaintiffs in the suit brought by North River.
The Professional Liability Coverage Part of plaintiffs' policy provides the following coverage in relevant part:
I COVERAGE AGREEMENTS
A. We will pay all amounts, up to our limit of liability, which you become legally obligated to pay as a result of a wrongful act by you or by any entity for whom you are legally liable.
....
C. We have the right and will defend any claim. We will do this even if the charges of the claim are groundless, false, or fraudulent....
D. We have no duty to defend any claim not covered by this Coverage Part.
"Wrongful act" is defined in the policy as "any negligent act, error or omission in: A. the rendering of or failure to render, professional services." The policy contains the following exclusion:
We will not defend or pay, under this Coverage Part for:
........
G. any fine, penalty, or claim for return of fees.
The policy defines "claim" as "the receipt of a demand for money or services, naming you and alleging a wrongful act."
In an oral opinion granting summary judgment in favor of CNA, the trial judge assumed that plaintiffs were negligent in performing legal services for North River and that North River's suit is based on such negligence. He concluded that:
The claim is for mismanagement, failure to perform necessary work, performance of unnecessary work, failure to develop a plan of action, unauthorized raising of hourly billing rates, billing for time necessary to correct errors made by the attorneys themselves, charging excessive amounts in the bills for services, and billing for excessive amounts of time.
With respect to North River's claim for costs incurred in hiring substituted counsel, the trial judge stated he found "no coverage for such a claim, even if it is being made." He also *88 found the exclusion clear, unambiguous and applicable to the claim.
The plaintiffs contend that the trial court erred by not construing the provisions of plaintiffs' professional liability policy strictly against CNA and the judgment was factually and legally incorrect.

I
Initially, an insurer's duty to defend an action against the insured is measured by the allegations contained in the complainant's pleadings. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965); Danek v. Hommer, 28 N.J. Super. 68, 77, 100 A.2d 198 (App.Div. 1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954); 7C Appleman, Insurance Law and Practice § 4683, at 42 (Berdal ed. 1979). The duty to defend arises when the complaint states a claim constituting a risk falling within the purview of the policy language. Danek, 28 N.J. Super. at 77, 100 A.2d 198. If the pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend regardless of the insured's ultimate liability to the complainant. Appleman, supra. The nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer, determines whether the insurer is obliged to defend. Ohio Cas. Ins. Co., 44 N.J. at 512, 210 A.2d 221; see also Hackensack Water Co. v. General Accident, Fire & Life Assur. Corp., 84 N.J. Super. 479, 482-83, 202 A.2d 706 (App.Div. 1964); Van Der Veen v. Bankers Indemnity Ins. Co., 30 N.J. Super. 211, 217, 103 A.2d 900 (App. Div. 1954). The duty to defend is broader than the duty to pay. Lumbermen's Mutual Casualty Co. v. United Servs. Automobile Ass'n, 218 N.J. Super. 492, 497, 528 A.2d 64 (App.Div. 1987); NPS Corp. v. Insurance Co. of N. Am., 213 N.J. Super. 547, 550-51, 517 A.2d 1211 (App.Div. 1986); Danek, 28 N.J. Super. at 79, 100 A.2d 198.
*89 Plaintiffs contend that when dealing with the insurance coverage clause, a broad and liberal view is to be taken of coverage extended, but if the clause is one of exclusion, designed to limit the protection, a strict interpretation is applied, citing Ohio Cas. Ins. Co., 44 N.J. at 514, 210 A.2d 221. Nevertheless, if the exclusion is clear and unambiguous, it is enforced. See Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 241-44, 246, 405 A.2d 788 (1979). Plaintiffs also invoke a rule of construction that "[i]nsurance policies are interpreted in a manner that recognizes the reasonable expectations of the insured, Zuckerman v. National Union Fire Ins. Co., 100 N.J. 304, 320, 495 A.2d 395 (1985); Passanante v. Yormark, 138 N.J. Super. 233, 238, 350 A.2d 497 (App.Div. 1975), certif. denied, 70 N.J. 144, 358 A.2d 191 (1976), and the courts are bound to protect the insured to the full extent that any fair interpretation of the contract will allow."
An insured's "reasonable expectations" are circumscribed by genuine ambiguities and misleading terms and conditions of insurance contracts but an objectively reasonable interpretation of the average policy holder is accepted so far as the language of the insurance contract will permit. DiOrio v. New Jersey Manufacturers Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979); accord Weedo, 81 N.J. at 246-47, 405 A.2d 788. Here the exclusion is straightforward  that fees are excluded from coverage; there is no ambiguity or misleading terms and conditions under the policy. See Petronzio v. Brayda, 138 N.J. Super. 70, 350 A.2d 256 (App.Div. 1975) (doctrine of reasonable expectations not applied where there was no ambiguity in the limitation of coverage for household employees); Foley v. Foley, 173 N.J. Super. 256, 414 A.2d 34 (App.Div. 1980) (no ambiguity in excluding from coverage for personal injury claims between related persons in the same household); Mt. Hope Inn v. Travelers Indem. Co., 157 N.J. Super. 431, 384 A.2d 1159 (Law Div. 1978) (no coverage under "dram shop" exclusion for negligence against bar owner in serving a visibly intoxicated person). Moreover, plaintiffs, as attorneys, would certainly be *90 expected to realize that a claim for return of fees was not covered by the insurance policy. Plaintiffs admit that they "received the policy, read it and understood it."
As to the first count, the nature of the damage claimed by North River is that plaintiffs' fees were not reasonable and thus North River was entitled to the difference between the quantum meruit value of the services and the amount paid. Count One does not seek damages for a consequential loss or an adverse result in the underlying suit. North River is attempting to recoup money paid to plaintiffs that it alleges exceeded the reasonable value of the services. The alleged excessive amount resulted from at least four different types of actions by plaintiffs: charging for services not performed; increasing the hourly rate without the permission or approval of North River; billing for services necessarily performed to right previous wrongs allegedly committed by plaintiffs in handling the case; and negligently managing the file and developing a plan of action.
North River's allegations fall within the exclusion from coverage of a "claim for return of fees." The policy defines "claim" as a demand for money alleging a "wrongful act," which is any negligent act or omission in the rendering of or failure to render professional services. Thus, although the policy covers negligent conduct, when the negligent conduct is alleged in order to recoup fees paid, the exclusion applies by excepting this category of claims. To construe the claims for damages under the first count any other way than to exclude a claim for fees would render the exclusion meaningless. Accordingly, CNA is not required to assume the defense under count one of North River's complaint. Cf. Perl v. St. Paul Fire & Marine Ins. Co., 345 N.W.2d 209 (Minn. 1984) (although there was no exclusionary clause concerning a suit for return of legal fees, a policy that purports to insure an individual attorney for fee forfeiture for breach of fiduciary duty is contrary to public policy and such an exclusion for fees would be permissible).

*91 II
Count Two of North River's complaint alleges that plaintiffs breached their contract to render professional legal services. In addition to a return of fees representing the difference between the reasonable value of the services and the amount actually paid for those services, it seeks "judgment for additional legal costs [it] has and will incur to prosecute the action filed against Kupper Engineering, Inc. and the Borough of Mantoloking and costs, attorneys' fees, interest and such other relief as may be just." North River's answers to interrogatories state that because it had to terminate plaintiffs due to their negligent work, it had to incur additional attorneys' fees and expenses by retaining new counsel. North River also stated that its new counsel "had to perform the work that [plaintiffs] had allegedly done and attempt to develop the case."
It is not clear from the record whether North River is contending that the additional attorney's fees and expenses in retaining new counsel should be deducted from the fees already paid to plaintiffs or whether it is claiming additional damages above and beyond the fees actually paid.
CNA argues that these additional fees represent fees necessarily spent to proceed with the case and thus are not recoverable by North River in any event. It makes an analogy to Weedo, which was a claim under a comprehensive general liability policy for repair caused by faulty workmanship in breach of a contract by a masonry contractor. The property owners instituted suit against the masonry contractor for the cost of removal of stucco and replacement with proper material. The masonry contractor instituted suit against its insurance carrier for the loss caused by its unworkmanlike performance. The Supreme Court noted that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to third persons and property. 81 N.J. at 240, 405 A.2d 788. The Supreme Court held that the repairs required were a business risk and thereby excluded by *92 the exclusion clause of the insurance policy. Id. at 241-44, 405 A.2d 788. On the other hand if a loss represents damages to third parties, then the insuring agreement to pay damages caused by an occurrence would apply. See id. at 240, 405 A.2d 788.
Here, as to the first count, the exclusion properly applies insofar as the recoupment of fees is concerned; however, if the claim of North River is for damages over and above the recoupment of legal fees, then the exclusion would not apply. In other words, North River may be seeking payment for fees paid to its new counsel in connection with the costs of taking over the case and reviewing the file or repayment of fees for services rendered to correct problems in the case caused by plaintiffs' alleged negligence. As consequential damages to North River because of plaintiffs' wrongful conduct, these damages would come within the coverage provision of the policy. Since the record does not disclose precisely what the claim is for, an issue of material fact exists under the second count and thus the matter is not ripe for a summary judgment in favor of CNA. It makes no difference whether the allegations of the complaint arise out of a breach of contract or tort obligation. The attorneys' obligation to the client partakes of both tort and contract. The attorney implicitly contracts to exercise ordinary skill and knowledge in the rendition of professional services. Mallen & Levit, Legal Malpractice § 75, at 106 (West 1977). That implied promise is, of course, also the standard of care that determines negligence. Id. at 106-07.
It is thus apparent that CNA does not owe a defense to or payment of the claim under the first count of the complaint by North River against plaintiffs but may owe a duty of defense or payment of the claim under the second count.
We have previously cited the principle that in deciding whether a duty to defend exists, "the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay *93 the resulting judgment." Danek, 28 N.J. Super. at 77, 100 A.2d 198. This general principle is subject to several exceptions, however. When coverage, i.e., the duty to pay, depends upon a factual issue which may not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 388, 267 A.2d 7 (1970). So too, "[w]henever the [insurer's] position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences." Id. at 391, 267 A.2d 7; see also Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 23-24, 483 A.2d 402 (1984); Heldor Inds. v. Atlantic Mut. Ins. Co., 229 N.J. Super. 390, 399, 551 A.2d 1001 (App.Div. 1988); Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 247, 310 A.2d 485 (App.Div. 1973), certif. denied, 64 N.J. 322, 315 A.2d 411 (1974). It is not presently apparent whether there is a conflict of interest. In the event it becomes apparent that there is a conflict of interest, CNA would be required to turn over the defense of the claim to counsel chosen by plaintiffs.
The summary judgment in favor of CNA under the first count is affirmed; the summary judgment in favor of CNA on the second count is reversed and the matter is remanded to the trial court for proceedings to determine whether the allegations in the second count come within the exclusions of the Lawyer's Professional Liability Policy.