267 N.J. Super. 537 (1993)
632 A.2d 286
SEARCH EDP, INC., A NEW JERSEY CORPORATION AND NEAL P. MONDA, PLAINTIFFS-APPELLANTS,
v.
AMERICAN HOME ASSURANCE COMPANY AND THE FRANKLIN MUTUAL INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 5, 1993.
Decided October 20, 1993.
*539 Before Judges PRESSLER, DREIER and KLEINER.
Ronald A. Breslow, attorney for appellants (Helen E. Cooney, on the brief).
Voorhees & Acciavatti, attorneys for respondent American Home Assurance Company (Diane M. Acciavatti, of counsel and on the brief).
Methfessel & Werbel, attorneys for respondent Franklin Mutual Insurance Company (Anthony P. Pasquarelli, on the brief).
The opinion of the Court was delivered by PRESSLER, P.J.A.D.
This is an insurance coverage declaratory judgment action. Plaintiff Search EDP, Inc., a New Jersey corporation, operates an employment agency. Plaintiff Neal P. Monda is one of its personnel placement counselors. Search EDP has a personnel consultants' errors and omissions policy issued to it by defendant American Home Assurance Company. It has a business general casualty and liability policy and a commercial umbrella liability insurance policy issued by defendant Franklin Mutual Insurance Company. Plaintiffs appeal from a summary judgment dismissing, as against both insurers, their complaint seeking a defense and indemnity in an underlying action brought against them by Lisa and Billy Gonzalez. We affirm as to Franklin but reverse as to American Home.
*540 The facts relevant to the coverage issue are simple and undisputed. The Gonzalez complaint against plaintiffs was filed in September 1991. It alleges a cause of action based on plaintiffs' asserted professional negligence. More particularly, it alleges that in September 1990, plaintiffs, having negligently screened and evaluated the personal qualifications of one William Donohue, referred Donohue to Toys `R' Us for employment as a computer programmer. Donohue was hired. Several months later, he "violently assaulted" Lisa Gonzalez, a co-worker, seriously injuring her. The implication of the complaint is that had plaintiffs properly conducted a background check of Donohue, as its professional undertaking obliged it to do, it would have been alerted to Donohue's alleged unstable or assaultive tendencies and would either have passed that information on to his prospective employer or not have placed him at all. Consequently, Gonzalez asserts that her injuries at Donohue's hand were caused by plaintiffs' professional negligence. Her husband sued per quod.
Search EDP sought a defense and indemnification for it and its employee from both its errors and omissions carrier, American Home, and its general liability carrier, Franklin. Both disclaimed, relying on specific exclusion clauses of their respective policies, and this coverage action ensued. On motion and cross-motions for summary judgment, the trial judge sustained the position of both defendants.
The Franklin policies are typical business liability and casualty policies providing broad coverage for a wide range of business risks and containing the exclusions typical of such policies, such as risks covered by workers' compensation, automobile negligence, and the like. Exclusion number 11 of the business policy, encaptioned "Professional," provides as follows:
We do not cover bodily injury, property damage, or personal injury arising out of the rendering or failure to render any sort of professional services.
The commercial umbrella policy contains an even more explicit exclusion, which provides that
It is agreed that this policy shall not apply to liability arising out of the rendering of or failure to render professional services, or any error or omission, malpractice *541 or mistake of a professional nature committed by or on behalf of the named insured in the conduct of any of the insured's business activities.
The risks excluded by this provision are, of course, precisely the risks covered by American Home's errors and omissions policy, whose initial coverage statement on the first page of its insuring agreement reads in full as follows:
Coverage A  Errors and Omissions.
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages resulting from any wrongful act of the Insured, or of any other person for whose actions the Insured is legally responsible, but only if such wrongful act occurs during the Policy Period and arises out of the conduct of the Insured's business as a Private Personnel Placement Service as herein defined.
It is clear that general liability policies and errors and omissions policies ordinarily cover and are intended to cover different categories of risk. As explained by Nationwide Mut. Ins. Co. v. American Reinsurance Co., 796 F. Supp. 275, 280 (S.D.Ohio 1991), aff'd, 961 F.2d 1578 (6th Cir.1992), a case involving a coverage dispute between an employment agency's errors and omissions carrier and the carrier's commercial umbrella policy reinsurer, the essential purpose of an errors and omissions policy is to cover liability risks unique to and inherent in the practice of a particular profession and which transcend the customary business risks which the practice of a profession shares with the conduct of other types of business enterprises. As Nationwide also made clear, "[t]his understanding of the purpose of errors and omissions coverage appears to be common in the insurance industry as well...." Ibid. It relied for that proposition on this excerpt from an insurance industry publication:
Persons or organizations that render professional services face an additional liability exposure  the failure to use due care and the degree of skilled [sic] expected of a person in a particular profession. Insurance for this exposure is known variously and without complete consistency, as professional liability insurance, malpractice insurance, or errors and omissions liability insurance ... [E]rrors and omissions liability is usually limited to non-medical professions.... Id., at 281.
It seems, therefore, fair to assume that an insured who has both an errors and omissions policy and a general liability policy has so opted based on the understanding that the general liability policy does not cover professional negligence and the errors and omissions *542 policy does not cover general business liability. The insured's reasonable expectation, consequently, is that the risk of claims of professional negligence is protected against by the errors and omissions policy and other claims of negligence by the general liability policy. The insured would, therefore, reasonably expect that all business negligence of whatever character would be covered by one policy or the other.
We address Franklin's general liability and umbrella policies in this context. We recognize those well-settled principles governing the interpretation of contracts of insurance that mandate broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations. See, e.g., Salem Group v. Oliver, 128 N.J. 1, 4, 607 A.2d 138 (1992); Owens-Illinois, Inc. v. United Ins. Co., 264 N.J. Super. 460, 486-87, 625 A.2d 1 (App.Div. 1993). None of these principles can warrant a finding of errors and omissions coverage in the Franklin policies. The exclusionary language for errors and omissions claims is unambiguous and unequivocal, there is no inherent inconsistency between the scope of the included risks and the excluded risks, and there is no indication that reading the exclusion as written would frustrate the insured's reasonable expectations. Indeed, the contrary appears to be so. We therefore affirm the summary judgment in favor of Franklin.
We view the matter of the errors and omissions policy differently. American Home's disclaimer is based on this language which appears on the second page of the insuring agreement under the caption "EXCLUSIONS," as the first of three numbered paragraphs:
The Company shall not be liable to make any payment in connection with any claim made against the Insured:
1. for bodily injury to, or sickness, disease or death of any person or persons, or for damage to or destruction of any property, including the loss of use thereof; ...
The remaining two numbered paragraphs exclude coverage for fines and penalties and "dishonest, fraudulent, criminal or malicious acts or omissions."
*543 The trial judge viewed the bodily-injury exclusion as unambiguous and, therefore, as a proper basis for American Home's refusal to defend and indemnify. We disagree. We are satisfied that the exclusion cannot be read as extending to bodily injury which results or is alleged to result from professional negligence.
First among our reasons for reaching this conclusion is our perception that there is a facial conflict between the risks that are covered and those that appear to be excluded. That is to say, we find an inherent conflict in coverage for "all sums which the Insured shall become legally obligated to pay as damages resulting from any wrongful act of the Insured.... [that] arises out of the Insured's business as a Private Personnel Placement Service" and an asserted exclusion for bodily injury claims against the insured resulting from just such a wrongful act. We fully subscribe, moreover, to the proximate-cause test for resolving facial conflicts. That test was enunciated by 5 Appleman, Insurance Law and Practice, § 3083 at 309-311 (1970), first endorsed by this court in Franklin Packaging Co. v. California Union Ins. Co., 171 N.J. Super. 188, 191, 408 A.2d 448 (App.Div. 1979), certif. denied, 84 N.J. 434, 420 A.2d 340 (1980), and is regarded as expressing the majority rule in those jurisdictions addressing the issue. See Cavalier Group v. Strescon Indus., Inc., 782 F. Supp. 946, 956 (D.Del. 1992). See also Stone v. Royal Ins. Co., 211 N.J. Super. 246, 251, 511 A.2d 717 (App.Div. 1986); Ariston Airline & Cater. Sup. v. Forbes, 211 N.J. Super. 472, 487, 511 A.2d 1278 (Law Div. 1986).
According to the proximate-cause test, "[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." Appleman, supra, at 309. Put another way by Appleman, id. at 311, "recovery may be allowed ... where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk." We regard the insured risk here to be an *544 act of professional negligence  in this case, an alleged failure properly to check a job applicant's background and references. That is conduct clearly within the fundamental coverage of the policy. The gravamen of the Gonzalez complaint against the insured is that that act of professional negligence "set into operation a chain of causation" whose last step was Lisa Gonzalez's bodily injury. Her claim for that bodily injury may be read as literally encompassed by the bodily injury exclusion. It was, nevertheless, either caused by the insured as a direct and proximate result of a covered risk or not caused by the insured at all. In these circumstances, application of the proximate-cause rule entitles plaintiffs to a defense and to indemnity as well should the Gonzalezes prevail.
We also conclude that the insured's reasonable expectations mandate coverage by the errors and omissions carrier. The obtaining of special coverage for acts of professional negligence by way of purchase of and payment for an errors and omissions policy is assuredly understood by the insured as affording protection from whatever consequences might reasonably flow from the conduct which is the subject of the protection bargained for. Here, for example, if plaintiffs had negligently placed with an innocent employer a person with a record of embezzlement who then stole from that employer, they would have expected a defense and indemnification against the employer's claims and would have been entitled to it. So here. The act of negligence in failing to check a job applicant's background is the same act of negligence and subject to the same coverage irrespective of the precise nature of the damages flowing therefrom. In our view, the right to a defense and indemnity cannot reasonably be made to depend upon the particular harmful consequence resulting from covered conduct.
Denial of coverage in the circumstances here would defeat the insured's reasonable expectations in much the same manner as, for example, an automobile liability policy which, in its coverage statement, included all claims for negligent operation and in a later exclusion, excepted claims by injured pedestrians. As Justice *545 Jacobs instructed in Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 483, 170 A.2d 22 (1961), "[w]here particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective." This principle applies here. The purpose of the errors and omissions policy is to protect an insured who commits an act of professional negligence. If an act of professional negligence causes actionable damage to another, but if the insured's right to protection depends not on the nature of the act but rather on the nature of the resulting damage, we believe that the stated policy objective would be substantially nullified. We thus conclude that the errors and omissions policy here will fairly fulfill its stated objective only by reading the bodily injury exclusion as excepting bodily injury claims alleged to have resulted from an act of professional wrongdoing.
Finally, we reject American Home's argument that the proximate-cause rule was rejected by this court in Hofing v. CNA Ins. Companies, 247 N.J. Super. 82, 588 A.2d 864 (App.Div. 1991). Hofing, in addressing the question of whether there is a duty to defend, stated the general rule, namely, that if the "pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend regardless of the insured's ultimate liability to the complainant." Id., at 88, 588 A.2d 864. It also said that "[t]he nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer, determines whether the insurer is obliged to defend." Ibid. American Home would have us read the phrase "damage claim" as implying that the nature of the injury rather than the nature of the risk determines coverage. We decline to do so. First, the sentence in which the phrase appears was quoted from Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965). The use of that language in context persuades us that the Court was using the phrase "nature of the damage claim" to mean the nature of the cause of action supporting the claim. That reading is supported by Ohio's conclusion, presaging the proximate-cause test, that "[t]he resolution of the problem [of determining the *546 existence of a duty to defend] is to be found in a determination of whether the terms of the policy encompass the causation of the accident. ..." Id. at 514, 210 A.2d 221. (Emphasis added.)
Nor do we view our holding here in any way inconsistent with Hofing. Hofing dealt with an exclusion from attorney malpractice coverage of a client's claim for the return of fees. The point we there made was that an attorney's conduct in overcharging or mischarging a client is qualitatively different from an attorney's negligence in handling the client's legal matter. Different risks and different exposures are involved. We consequently do not find Hofing apposite.
The summary judgment dismissing the complaint as against defendant Franklin Mutual Insurance Company is affirmed. We reverse the summary judgment dismissing the complaint as against American Home Assurance Company and remand for entry of summary judgment against it and in plaintiffs' favor for the relief sought in the complaint.