742 A.2d 564 (1998)
326 N.J. Super. 558
Suzanne MILLER, Plaintiff,
v.
John McCLURE, individually and as a Supervising Employee of Artex Knitting Mills, Inc. ("Artex"), Defendant-Appellant, and
Artex; Arthur Pottash, individually and in his capacity as an officer, shareholder, director and manager of Artex and in his capacity as the Supervisor of the Plaintiff and McClure; and Bernard Gerbarg, individually and in his capacity as an officer, shareholder director and manager of Artex and in his capacity as the Supervisor of Plaintiff and McClure, Defendants, and
John McClure, Defendant/Third-Party Plaintiff,
v.
Atlantic Mutual Insurance Company,[1] New Jersey Re-Insurance Company and Huron Insurance Comany, Third-Party Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued telephonically December 18, 1997.[2]
Decided May 27, 1998.
*566 Kimberly D. Sutton, Haddonfield, for appellant, defendant third-party plaintiff (Obermayer, Rebmann, Maxwell & Hippel, attorneys; Ms. Sutton, on the brief).
Wendy Mager, Princeton, for respondent, third-party defendant Atlantic Mutual Insurance Company (Smith, Stratton, Wise, Heher & Brennan, attorneys; Ms. Mager, of counsel; Ms. Mager and Susan L. Olgiati, on the brief).
Robert M. Smolen, Mount Laurel, for respondent, third-party defendant Huron Insurance Company (Swartz, Campbell & Detweiler, attorneys; William T. Salzer, of counsel; Mr. Smolen, on the brief).
John Coyne, Morristown, for respondent third-party defendant New Jersey Re-Insurance Company (McElroy, Deutsch & Mulvaney, attorneys; Mr. Coyne, on the brief).
Before Judges D'ANNUNZIO and COBURN.
*565 PER CURIAM.
In this employment discrimination suit, based on alleged sexual harassment, defendant third-party plaintiff, John McClure, appeals, pursuant to leave granted, from interlocutory orders determining that there is no coverage for him under certain insurance policies issued by the third-party defendants. The insurance policies are a homeowners policy issued by Huron Insurance Company (Huron) to McClure; a comprehensive general liability policy issued by Atlantic Mutual Insurance Company (Atlantic) to his employer Artex Knitting Mills, Inc. (Artex); and a workers' compensation/employers' liability policy issued by New Jersey Re-Insurance Company (New Jersey) to Artex.
Suzanne Miller is the plaintiff in the underlying action. She filed a thirteen count complaint against McClure, Artex, and others. She seeks relief against McClure in the first eight counts and also in the thirteenth count. The thirteenth count, however, merely incorporates by reference all the allegations in the first twelve counts and seeks relief against all defendants.
Miller alleges that she was a factory worker employed by Artex beginning in July 1994 and McClure was her immediate supervisor. The core of Miller's allegations are contained in the first count of her complaint. We now reproduce certain paragraphs of the first count:
9. Over the course of several months, while employed by Defendant Artex, Plaintiff was repeatedly subjected to unwelcomed sexual remarks, lewd behavior, sexual innuendos, requests for sex, including requests stated in the most crude and graphic terms, and unwelcomed touching of a sexual nature by the Defendant McClure.
10. Defendant McClure repeatedly made crude sexual comments to Plaintiff, including, but not limited to, remarking that Plaintiff had: "bedroom eyes","a sister's ass" and a "nice set of tits".
11. Defendant McClure would repeatedly stare at Plaintiff's body parts, including her breasts, buttocks and crotch, in a sexual manner and say such things as, "I want to eat your pussy."
12. Defendant McClure repeatedly made comments to Plaintiff concerning the size of his penis, often times while grabbing his crotch.. . . . . 15. While they were both working, Defendant McClure repeatedly and regularly, *567 made unwelcomed sexual advances towards Plaintiff.
16. While they were both working, Defendant McClure continually groped and grabbed for many of the Plaintiff's body parts, without her permission and in opposition to Plaintiff's implicit and explicit objections, succeeding on many occasions. Specifically, some of these incidents include, but are not limited to, Defendant McClure grabbing Plaintiff between the legs, at the crotch, biting her buttocks, grabbing and slapping her buttocks and grabbing her breasts.
17. Defendant McClure repeatedly and regularly exposed himself, specifically by exposing his genitalia to Plaintiff, and propositioned Plaintiff.. . . . .
23. From the beginning of Plaintiff's employment, Defendant McClure attempted to, and did, use his position, power, influence and control, as her immediate Supervisor to harass and discriminate against Plaintiff. For example, Defendant McClure told Plaintiff that he had told Arthur Pottash, an "owner" of the Defendant Artex, to hire Plaintiff after McClure had seen her in the waiting room. Defendant McClure told Plaintiff that he had wanted her to be hired because she was young and pretty.
24. Unbeknownst to Plaintiff at the time, Defendant McClure directed Defendant Artex to hire Plaintiff as a "toy" for McClure's sexual amusement.
25. Defendant McClure was not just Plaintiff's supervisor, he was the management representative with the most authority and power at Artex after Artex's "owners", Arthur Pottash and Bernard Gerbarg.. . . . . . 43. Plaintiff was constantly in fear of losing her job, which she very much needed, as a result of her not complying with or responding to the sexual remarks, demands, innuendos, requests for sex and unwelcomed touching of a sexual nature, which she suffered at the hands of Defendant McClure.
44. As a result of the aforesaid actions of the Defendants, Plaintiff has suffered and will continue to suffer severe emotional distress, humiliation, embarrassment, fear and intimidation, stomach problems and headaches.
45. Said actions by Defendant McClure to extort sexual favors from Plaintiff constitute a "quid pro quo" sexual determination and harassment.
46. Said actions by Defendant McClure were performed under color of his authority as a supervising employee of Defendant Artex and, therefore, constitute the actions of Defendant Artex.
The principles of law governing the interpretation of liability coverage are well established and we summarized them in Sinopoli v.. North River Ins. Co., 244 N.J.Super. 245, 581 A.2d 1368 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991):
Our function when construing a policy of insurance, as with any other contract, is to search broadly for the probable intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policy. Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Tooker v. Hartford Acc. and Indemn. Co., 128 N.J.Super. 217, 222-223, 319 A.2d 743 (App.Div.1974). However, the language of liability insurance policies should be construed liberally in favor of the insured and strictly against the insurer, Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471, 479, 178 A.2d 1 (1962); accord Keown v. West Jersey Title and Guaranty Co., 161 N.J.Super. 19, 27, 390 A.2d 715 (App.Div.1978), certif. den., 78 N.J. 405, 396 A.2d 592 (1978), and in such manner as to provide full coverage of the indicated risk rather than to narrow protection. 13 Appleman, Insurance Law and Practice, § 7486 at 622. *568 (Buckley ed.1979). Conversely, exclusionary clauses should be strictly construed. Weedo v. Stone-E-Brick, Inc., 155 N.J.Super. 474, 485, 382 A.2d 1152 (App.Div.1977), rev'd on other grounds, 81 N.J. 233, 405 A.2d 788 (1979); Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576, 267 A.2d 527 (1970); Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8, 170 A.2d 800 (1961).
Nevertheless, the rule of liberal construction cannot operate to authorize a perversion of the language and the intention of the contracting parties. See James v. Federal Insurance Co., 5, N.J. 21, 24, 73 A.2d 720 (1950); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); accord Scarfi v. Aetna Casualty & Surety Company, 233 N.J.Super. 509, 559 A.2d 459 (App.Div. 1989). The court cannot rewrite the contract for the parties. See Middle Dept. Insp. Agency v. Home Ins. Co., 154 N.J.Super. 49, 54, 380 A.2d 1165 (App.Div.1977), certif. den. 76 N.J. 234, 386 A.2d 858 (1978). Nor is a court permitted, even under the guise of good faith and peculiar circumstances, to alter the terms of an otherwise unambiguous contract. If plainly expressed, the insurers are entitled to have liability limitations construed and enforced as expressed. 13 Appleman, supra, § 7486 at 623. Although a liability policy covers all losses which are fairly within the terms of the policy, it cannot be extended to liabilities or losses which are neither expressly or impliedly within its terms. 6B Appleman, supra, § 4254 at 26.
If the controlling language of a policy supports two interpretations, one favorable to the insurer and the other favorable to the insured, a court is obligated to apply the interpretation supporting coverage. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). The reasonable expectation of the insured should be accorded so far as the language of the policy permits. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305, 208 A.2d 638 (1965); Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 121-122, 179 A.2d 505 (1962). The burden is on the carrier to bring the case within the exclusion. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 399, 267 A.2d 7(1970).
[Id. at 250-51, 581 A.2d 1368.]
We add that exclusions must be narrowly construed, and the insurer has the burden of establishing that the exclusion applies. Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95, 698 A.2d 9 (1997). "However, exclusions are presumptively valid and will be given effect if `specific, plain, clear, prominent, and not contrary to public policy.'" Ibid. (quoting Doto v. Russo, 140 N.J. 544, 559, 659 A.2d 1371 (1995)).
We first address McClure's demand for coverage under the "workers compensation and employers liability policy" issued by New Jersey Re-Insurance Company to Artex. The trial court granted New Jersey summary judgment on the ground that the policy provided no coverage to McClure or Artex employees. We affirm. The policy defined an insured as follows:
You are an insured if you are an employer named in item one of the information page. If that employer is a partnership and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.
The information page referred to in this section names "Artex Knitting Mills, Inc." as the insured. There is nothing in the record to indicate that Artex is other than a corporation and, moreover, if it is a partnership, there is nothing in the record to indicate that McClure is a partner. Accordingly, McClure is not an insured under New Jersey's policy, and we affirm the judgment in favor of New Jersey.
Atlantic issued a commercial general liability policy to Artex. It provided liability coverage for "bodily injury" under "Coverage *569 A" and for "personal injury" under "Coverage B." The policy defined bodily injury as "bodily injury, sickness or disease sustained by a person, including death...." It defined personal injury, to the extent relevant to this case as
injury, other than bodily injury, arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owners, landlord or lessor.
The policy insured Artex and its "executive officers and directors ... but only with respect to their duties as your officers or directors." The policy extended coverage to employees other than officers and directors in the following language:
2. Each of the following is also an insured:
a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:
(1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment....
The policy's exclusion of coverage for injury to employees was a major theme of the policy. Thus, the insuring agreement, in Section I 2e(1), excluded coverage for "bodily injury to (1) an employee of the insured arising out of and in the course of employment by the insured." Atlantic's policy contained an endorsement titled, "Employment-Related Practices Exclusion ". It states:
1. The following exclusion is added to COVERAGE A (Section 1): o. "Bodily injury" arising out of any: (1) Refusal to employ;
(2) Termination of employment;
(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
(4) Consequential "bodily injury" as a result of (1) through (3) above.
This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.
An identical exclusion applied to personal injury under Coverage B.
We affirm the judgment in favor of Atlantic. The policy covers McClure as an employee but only for acts within the scope of his employment. Plaintiff's core allegation that she was the victim of sexual harassment constituting sex discrimination under New Jersey's Law Against Discrimination (LAD) is dependent on her employment by Artex and McClure's position as her supervisor. Consequently, McClure is an insured under the policy regarding those alleged acts. The same facts, however, remove McClure as an insured under that part of the definition of insured providing that "no employee is an insured for bodily injury or personal injury ... to a co-employee while in the course of his or her employment." See Schmidt v. Smith, 294 N.J.Super. 569, 580, 684 A.2d 66 (App. Div.1996) (acknowledging that comprehensive general liability policy did not cover hostile work environment claim based on sexual harassment because policy excluded coverage for "bodily injury to any employee of the insured arising out of and in the course of his employment"), certif. granted, 148 N.J. 461, 690 A.2d 608 (1997).
Additionally, under the "Employment-Related Practices Exclusion," there is no coverage for "harassment, humiliation, discrimination or other employment *570 related practices, policies, acts or omissions." In Schmidt, supra, another panel of this court concluded that an almost identical exclusion did not apply to an employer's vicarious liability for the intentional tort committed by the corporate employer's executive. Id. at 581-84, 684 A.2d 66. The court ruled that the exclusion did not apply because the employer had not committed an intentional act and its liability was merely vicarious. Ibid. We need not take a position regarding Schmidt's holding because it is distinguishable from the present case. Here, McClure, the employee who allegedly committed the acts complained of, is seeking coverage. We are persuaded that the Employment-Related Practice Exclusion endorsement also precludes coverage for plaintiff's claims.
Before we leave the Atlantic policy and address the Huron policy, we reproduce certain additional allegations in the plaintiff's complaint regarding the "company party" and related gun incident.
28. Defendant McClure further attempted to intimidate Plaintiff in approximately October of 1994 and coerce her into an unwanted sexual relationship by inviting her to what McClure said was a "company party" which he was hosting. McClure told Plaintiff "to keep it quiet, because not everyone's invited."
29. Plaintiff and a friend who accompanied her got lost on the way to the "party." Plaintiff then called the phone number Defendant McClure had given her for further directions and was told by a woman, claiming to be McClure's aunt, to wait there.
30. Defendant McClure's wife then showed up and took Plaintiff to ... McClure's house.
31. Defendant McClure's wife told Plaintiff that she was agitated at her husband upon learning of Plaintiff's presence because she knew that there was not any company party being conducted at her home and that she thought this was another of Defendant McClure's attempts to cheat on her.
32. Defendant McClure came out of the house with a gun and threatened to shoot Plaintiff and her friend, if they did not leave his property. He then shot the gun into the air. The Plaintiff and her friend quickly left.
33. Plaintiff and her friend feared that they might be killed when McClure threatened them with, and fired, his gun.
34. Defendant McClure's invitation to his "company party" was just another attempt to persuade and coerce Plaintiff into an unwanted sexual relationship. Defendant McClure did not expect his wife to be home at the time.
35. The following week, Defendant McClure put a miniature gun on his key chain, which had not been there previously, reminding Plaintiff of the weekend's "company party" in an attempt to intimidate Plaintiff.
In Count Three of her complaint, plaintiff alleges that McClure assaulted her "by threatening her with a gun and shooting it in the air."
In Count Seven, plaintiff alleges that McClure "falsely and intentionally held plaintiff against her will on numerous occasions without any just or legal authority." Count Seven alleges that on one occasion McClure prevented plaintiff from leaving his vehicle "and forced Plaintiff to remain in his vehicle against her will while he then drove her home." Count Seven also alleges that McClure restrained plaintiff from leaving the bathroom at the factory while he attempted to kiss her. In the final paragraph of Count Seven, plaintiff alleged that "[a]s a result of Defendant McClure intentionally holding and imprisoning Plaintiff against her will, Plaintiff suffered physical, psychological and emotional damage."
Count Eight is based on an allegation of negligence, incorporates by reference all the allegations in Count One through Seven and alleges that "McClure negligently subjected Plaintiff to an unreasonable risk of emotional disturbance sufficient to *571 threaten illness or bodily harm ... and negligently interfered with Plaintiff's integrity and ability to perform her duties as an employee." Those acts "actually and proximately resulted in physical illness and other bodily harm to the Plaintiff and interfered with Plaintiff's integrity and ability to perform her duties as an employee."
We are persuaded that the Atlantic policy does not cover McClure for the claims in Counts Three, Seven and Eight. As previously indicated, Atlantic's policy covered McClure only for acts within the scope of his employment by Artex. If we assume those counts allege acts by McClure within the scope of his employment then the exclusions previously discussed preclude coverage. If McClure were not acting within the scope of his employment then he was not an insured under Atlantic's policy.
The Huron policy insures John J. and Maureen McClure. Characterized as a "Homeowners 91 Policy," it covers casualty to their property and also provides liability coverage.
The policy provides coverage for a claim for damages "because of bodily injury ... caused by an occurrence to which this coverage applies." The policy defines an occurrence as "an accident." Bodily injury is defined as "bodily harm, sickness or disease ... and death that results."
Excluded from liability coverage is "bodily injury ... which is expected or intended by the insured." Also excluded are claims:
b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."
...
k. Arising out of sexual molestation, corporal punishment or mental abuse.
The definition section provides:
2. "Business" includes trade, profession or occupation.
The trial court determined that the Huron policy does not provide coverage because Miller's claims are excluded under exclusion k. as claims arising out of sexual molestation or mental abuse. In addition, the court also ruled that the business exclusion also precluded coverage.
We partially agree with the applicability of the business exclusion. We are persuaded that it excludes those of Miller's claims which are actionable because of her employment relationship with McClure. See Greenman v. Michigan Mutual Ins. Co., 173 Mich.App. 88, 433 N.W.2d 346, 349-50 (1988) (concluding that business pursuits exclusion in homeowner's policy precluded coverage for sexual harassment claim, in part because claim not actionable in the absence of an employer-employee relationship); see also Aetna Casualty and Surety Co. v. Ericksen, 903 F.Supp. 836, 840-41 (M.D.Pa.1995) (holding that claim for libel was excluded from coverage under business pursuits exclusion where defamatory statement consisted of written complaint by defendant, a college teacher, to the Dean complaining of plaintiff's alleged sexual harassment, but defendant's statement to the press not so excluded). Offensive and vulgar sexual advances by McClure are actionable because Miller was McClure's co-employee and McClure had an employment position superior to Miller. Those claims, therefore, arose "out of or in connection with a `business' engaged in by" McClure, since "business" includes an insured's occupation. Thus, claims of quid pro quo or hostile work environment sexual harassment in violation of New Jersey's Law Against Discrimination are excluded from coverage.
Miller's claims which are not dependent on the employment relationship, i.e., claims which would be actionable even if McClure was not a co-employee, are not excluded as a business claim. For example, *572 if McClure engaged in the unconsented touching of Miller's intimate parts, see N.J.S.A. 2C:14-1e, Miller would have an actionable claim against McClure even if they were not co-employees. Cf. N.J.S.A. 2C:14-3 (providing that unconsented sexual contact with a victim's intimate parts is a crime). Similarly, whether the gun episode is actionable does not depend on the parties' employment relationship. Indeed, Count Four charges McClure with battery because he "offensively touched the Plaintiff in a sexual manner on numerous occasions." We agree with the trial court, however, that the sexual molestation exclusion applies to the claims based on sexual touching.
Count Five alleges an invasion of privacy due to McClure's sexually-oriented comments and questions. As a result, Miller contends that McClure "caused and continues to cause plaintiff outrage, mental suffering, shame and humiliation," resulting in "stomach problems and headaches." We agree with the trial court that this is a claim for "mental abuse" within exclusion k, as are Count Six, Count Seven and Count Eight.
Alternatively, we are persuaded that the exclusion of claims for "injury ... expected or intended by the insured" applies because of the egregious and reprehensible conduct alleged in the complaint. See Mroz v. Smith, 261 N.J.Super. 133, 138, 617 A.2d 1259 (App.Div.1992) (holding that defendant's actions, consisting of sexual advances and harassing phone calls, were not covered under homeowner's policy; "expected or intended" exclusion applicable because intent to injure presumed); see also Schmidt, supra, 294 N.J.Super. at 588, 684 A.2d 66 (holding that defendant's pre-employment sexual advances were so reprehensible that injury was intended or expected and actions were not covered under defendant's homeowner's policy).
The judgment is affirmed.
NOTES
[1] Improperly pleaded as "Atlantic Mutual Companies."
[2] This appeal, originally scheduled to be argued December 17, 1997, was argued telephonically December 18, 1997.