773 A.2d 1204 (2001)
340 N.J. Super. 148
GARDEN STATE INDEMNITY COMPANY, Plaintiff-Respondent,
v.
MILLER & PINCUS, a Professional Association, Charles Miller, Marvin Pincus and Marc Brenner, Individually, Defendants-Appellants, and
Linda Smalley and American Arbitration Association, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 2001.
Decided May 1, 2001.
*1205 William Matsikoudis, Woodbridge, argued the cause for appellants (Wilentz, Goldman & Spitzer, attorneys; Alan Wasserman, of counsel and on the brief; Mr. Matsikoudis, on the brief).
Andrew L. Indeck, Bedminster, argued the cause for respondent (Scarinci & Hollenbeck, attorneys; Mr. Indeck, of counsel and on the brief; Kathleen J. Devlin, on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This declaratory judgment coverage action arises out of a legal malpractice claim made in the underlying case by Linda Smalley against defendant Miller & Pincus, P.A., and three of its lawyers, Charles Miller, Marvin Pincus, and Marc Brenner (M & P). Plaintiff Garden State Indemnity Company, defendants' malpractice carrier, commenced this action seeking a declaration that the personal injury that Smalley allegedly sustained arising out of M & P's malpractice was outside the scope of the coverage. Plaintiff also alleged that it was relieved of obligation under the policy by reason of defendants' untruthful answer to a question asked in the application. On motion and cross-motion for summary judgment, the trial judge accepted plaintiff's non-coverage position and entered summary judgment dismissing the complaint. Defendants appeal, and we reverse. We conclude that ambiguities in the policy mandate the coverage defendants seek.
The facts underlying Smalley's claim, insofar as they implicate this coverage action, *1206 may be briefly stated. Smalley sustained injury in 1987 in an automobile accident. Her personal injury protection (PIP) carrier, NJUFIUA/Hanover Amgro Insurance (JUA), paid PIP benefits through April 1991, when it declined further payment. It did, however, make a payment in January 1992 to a medical provider. Smalley retained M & P in February 1993 to seek further PIP benefits from JUA. It is not disputed that the limitations period for Smalley's action against JUA expired in January 1994, two years after the last PIP payment. N.J.S.A. 39:6A-13.1a. See Ochs v. Federal Ins. Co., 90 N.J. 108, 447 A.2d 163 (1982). M & P failed to file suit against JUA before the expiration of the limitations period. JUA then brought a declaratory judgment action against Smalley seeking a determination that it was no longer liable to her for PIP benefits by reason of the running of the statute of limitations. Along with her answer to that complaint, Smalley filed a third-party complaint against M & P in which she claimed that as a result of their malpractice in missing the statute of limitations, she lost the benefit of her PIP entitlement. By a separate count she also alleged that as a further result of the malpractice and because her PIP benefits had been withheld, she was unable to obtain the medical treatment she required and "thereby [was] caused to suffer, and continues to suffer, great pain and suffering." Plaintiff assumed the defense of the first claim only, that is, Smalley's alleged economic loss resulting from the withheld PIP payments. Eventually, JUA obtained judgment in its declaratory judgment action releasing it from further PIP liability, and plaintiff, as M & P's malpractice carrier, settled that claim with Smalley in the amount of $75,000. Smalley then released M & P from that claim but not from her personal injury claim that plaintiff had refused to cover. Plaintiff then brought this action seeking a declaration that under its policy it was not obliged to defend and indemnify defendant in respect of that claim.
In support of its position, plaintiff relied on a provision of Part B of its policy, entitled "Liability Not Insured." The introductory clause of Part B reads as follows:
We do not provide insurance for any sort of costs, damages, expenses, liability, or settlements, directly or indirectly, wholly or partially, aggravated by, caused by, or resulting from any of the following, even if a covered activity otherwise insured contributes to such concurrently or in any sequence.

[Underscored in the original.]
Thereafter follow thirteen numbered paragraphs, the first of which, entitled "Bodily Injury/Property Damage," reads, in respect of bodily injury, in full as follows:
A. We do not insure here any claim for bodily injury.

[Underscored in the original.]
Plaintiff's contention then is simply that the language of that exclusion effected by Part B is clear and precise and excludes coverage for bodily harm resulting from a covered activity. The trial court agreed despite its conclusion, with which we agree, that such an exclusion is contrary to the insured's reasonable expectations of coverage.
We consider this exclusionary clause in the context of well-settled principles of insurance-contract construction. In sum, policies of insurance, as contracts of adhesion, will be construed liberally in favor of the insured in order to meet the insured's reasonable expectations, and, consequently, ambiguities will be construed in favor of the insured, and exclusions and exceptions will be construed strictly against the insurer. See, e.g., Miller *1207 v. McClure, 326 N.J.Super. 558, 564-565, 742 A.2d 564 (App.Div.1998), aff'd o.b., 162 N.J. 575, 745 A.2d 1162 (1999); United Serv. Auto. Ass'n v. Turck, 156 N.J. 480, 492-493, 721 A.2d 1 (1998); American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998); Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am., 134 N.J. 1, 76, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); Lee v. General Accident Ins. Co., 337 N.J.Super. 509, 513, 767 A.2d 985 (App.Div.2001); Conduit v. Hartford Cas. Ins. Co., 329 N.J.Super. 91, 99, 746 A.2d 1053 (App. Div.), certif. denied, 165 N.J. 135, 754 A.2d 1212 (2000). We consider the totality of this policy in light of these principles.
To begin with, there is no dispute that the gravamen of defendants' malpractice, missing a statute of limitations, is a covered activity. It is also true that the first of these exclusions, which we have quoted, appears to deny coverage for a client's bodily injury resulting from a covered activitythe case here. But it also appears that such coverage is expressly afforded by Paragraph 7 of Part B, entitled "Personal Injury Exclusion," which reads in full as follows:
We do not insure here any claim arising out of personal injury.
This Exclusion does not apply to personal injury included within the definition of covered activities.

[Underscored in the original.]
It is obvious that by any common understanding of "personal injury," that term includes pain and suffering, emotional distress, and aggravation of bodily injuries just the injuries Smalley alleged. Nor can the term "personal injury" be otherwise understood by the legal community for whom "personal injury" is virtually a term of art encompassing every conceivable manner of psychological and physical harm. A fair and reasonable reading, therefore, of Paragraph 1, which purports to exclude bodily injury, taken together with Paragraph 7, which excludes personal injury, but which excepts from that exclusion personal injury within the definition of covered activity, is to conclude, despite the apparent contradiction, that a personal injury sustained by a legal malpractice claimant arising out of a covered activity is covered as an exception both to the bodily-harm exclusion and the personalinjury exclusion. And certainly, as the trial judge concluded, such an interpretation accords with the insured's reasonable expectation that all consequences of a covered act of malpractice are in turn covered. See, e.g., Search EDP, Inc. v. American Home Assurance Co., 267 N.J.Super. 537, 632 A.2d 286 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994).
Not so, says plaintiff, pointing to the Glossary comprising Part D of the policy. According to that Glossary, plaintiff contends, personal injury is defined so as to exclude bodily injury. And as we read the definitions in the Glossary, that is precisely what plaintiff has apparently attempted to do. Thus, the Glossary defines bodily injury as "bodily harm, mental anguish, emotional distress, sickness, or disease sustained by a person, including death resulting from any of these at any time." And it defines personal injury as meaning any of the following:
*false arrest, detention, imprisonment, or malicious prosecution
*wrongful entry, eviction or invasion of right of private occupancy
*infringement of copyright, slogan, or title
*libel or slander or other defamatory or disparaging material
*publication or utterance in violation of a person's right of privacy
*1208 Plaintiff's contention that it has defined personal injury to exclude bodily injury is literally correct. But we find that definition to be misleading in the extreme and certainly at odds with what is the apparent exception to the exclusion of Paragraph 7 of Part B. The general public, and lawyers in particular, would never understand or assume that the meaning of "personal injury" could be as limited as the policy definition. Surely, plaintiff could have used a term other than "personal injury" to refer to the damages arising from the specific torts it chose to encompass by that term. A phrase such as "special damages" might well have alerted the reader of the policy that something other than personal injury was intended. In our view, plaintiff's definitional undertaking is unavoidably reminiscent of Lewis Carroll's Humpty Dumpty:
"When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean neither more nor less."
"The question is," said Alice, "whether you can make words mean so many different things."
"The question is," said Humpty Dumpty, "which is to be masterthat's all."
Lewis Carroll, Through the Looking Glass 163 (W.W. Norton & Co. 1971) (1872).
It is axiomatic that an insurer owes an obligation to make its meanings clear in its contracts of adhesion and not to trap the unwary, whether lawyers or not, by redefining commonly understood terms in an idiosyncratic manner, and by then disclaiming coverage based on that eccentric redefinition. In short, we are satisfied that a lawyer reviewing the policy should be able to rely on a fair and reasonable meaning of paragraphs 1 and 7 of Part B read together and thus to conclude that personal injury, in its universal sense, arising out of a covered activity is an exception to the bodily injury exclusion.
Because we are satisfied that defendants are entitled to coverage for all of Smalley's claims as a matter of contract construction, we need not consider defendants' argument that a fractionalization of her damages into those that are covered and those that are not violates public policy by reason of its violation of the so-called "proximate cause rule." We note merely that although the majority view apparently permits exclusion of defined consequential claims, see cases collected in Assurance Co. of Am., Inc. v. Jay-Mar, Inc., 38 F.Supp.2d 349, 354 (D.N.J.1999), at least two jurisdictions, California and Washington, take the minority view that if a risk is covered by the policy, all consequential damages arising therefrom must also be covered. See Howell v. State Farm Fire and Cas. Co., 218 Cal.App.3d 1446, 267 Cal.Rptr. 708, 714-715 (1990); Safeco Ins. Co. of Am. v. Hirschmann, 112 Wash.2d 621, 773 P.2d 413, 416-418 (1989). We note further that at least two additional jurisdictions, Alaska and West Virginia, bar the exclusion of consequential claims where that exclusion defeats the reasonable expectations of the insured. West v. Umialik Ins. Co., 8 P.3d 1135, 1143 (Alaska 2000); Murray v. State Farm Fire & Cas. Co., 203 W.Va. 477, 509 S.E.2d 1, 13-15 (1998). While we do not take a position here, we nevertheless point out the inclination for the proximate-cause rule as expressed in Search EDP, Inc. v. American Home Assurance Co., supra, 267 N.J.Super. 537, 632 A.2d 286.
The order granting summary judgment to plaintiff is reversed. The order denying defendants' motion for summary judgment declaring coverage is reversed. We remand for further proceedings with respect *1209 to plaintiff's equitable fraud claim[1] and defendants' right to an award of counsel fees should they ultimately prevail.
NOTES
[1] See, e.g., Liebling v. Garden State Indem., 337 N.J.Super. 447, 767 A.2d 515 (App.Div. 2001).